### EMIL v. HANLEY.

### No. 306.

Circuit Court of Appeals, Second Circuit.

July 29, 1942.

David Haar, of New York City, for appellant.

Francis A. McGrath, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in bankruptcy which denied a motion of the bankrupt's trustee asking that a receiver in foreclosure appointed by the state court should account to the referee. The case was heard upon petition of the trustee with supporting and answering affidavits in which the following state of facts appeared. The petition in bankruptcy was filed on August 31, 1940 and the petitioner was appointed trustee in the following November. The bankrupt owned an apartment house which had been completed two or three months before (whether it was its only property or not does not appear), upon which there were three mortgages. At petition filed, an action to foreclose the third mortgage in the state court was pending, in which Hanley, the respondent, had been appointed receiver on August 17, 1940. He qualified on that day, collected the rents for the month of August and has collected those which fell due thereafter. Judgment of foreclosure was entered on June 13, 1941, the sale under which was set for August 6 and adjourned to August 14. On the 13th a corporation, known as Apartment Investing Corporation, paid and satisfied the mortgage, leaving nothing further to be done in the foreclosure suit except to pass the receiver's accounts; the same corporation had al-

ready on February 21, 1941, bought in the property under a judgment of foreclosure upon several mechanics' liens, junior to the mortgage. On August 14, 1941 the receiver moved in the state court for an order passing his accounts, and on the 15th the trustee made the motion now at bar to compel him to account in the bankruptcy court. Both motions were returnable on the 22nd, on which day the trustee appeared in the state court to protest against its jurisdiction; he was overruled, and on December 3, 1941, the receiver's accounts were passed, allowances were made to him and to his attorney, he was discharged and his bond was cancelled. The district judge held this motion open meanwhile and denied it on February 10, 1942. The outcome of the appeal turns on whether § 2, sub. a(21) and § 69, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(21), and § 109, sub. d, which were added in 1938, gave exclusive jurisdiction to the bankruptcy court over the accounts of a receiver in foreclosure.

■ As soon as the receiver qualified, all the rents were sequestered for the benefit of the third mortgagee. That is the law of the state (Sullivan v. Rosson, 223 N.Y. 217, 119 N.E. 405, 4 A.L.R. 1400) and the state law governs. In re Humeston, 2 Cir., 83 F.2d 187. The trustee questions whether the receiver is to be regarded as in possession before petition filed— August 31, 1940—because he collected no rents until September 1st. As we have said, he qualified on August 17th, but he never took possession because he could not, the property being held on leases. Even if he could have taken possession, but failed to do so until September 1st, it would not have mattered, for priority between courts in point of jurisdiction depends, not upon the day when the property comes into their possession but upon that of the commencement of the first suit in which possession can be taken. Farmers' Loan & Trust Company v. Lake Street Elevated Railroad Co., 177 U.S. 51, 61, 20 S.Ct. 564, 44 L.Ed. 667; Palmer v. Texas, 212 U.S. 118, 129, 29 S.Ct. 230, 53 L.Ed. 435; United States v. Bank of New York & Trust Co., 296 U.S. 463, 477, 56 S.Ct. 343, 80 L.Ed. 331; Princess Lida v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285. Before the addition of § 2, sub. a(21) and § 69, sub. d, there was therefore no doubt that the jurisdiction of the bankruptcy court over foreclosure receivers—including the power to pass their accounts—depended upon the petition's being earlier than the suit. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060; In re Greenlie-Halliday Co., 2 Cir., 57 F. 2d 173; Dannel v. Wilson-Weesner-Wilkinson Co., 6 Cir., 109 F.2d 364, 366. Such a receiver is quite unlike a receiver appointed in an "equity receivership" (Duparquet H. & M. Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591), or a statutory state insolvency proceeding, both of which are entirely superseded by a later bankruptcy proceeding. Straton v. New, supra, 283 U.S. at page 327, 51 S.Ct. 465, 75 L.Ed. 1060. Thus, the only question is whether the sections added in 1938 assimilated the two receiverships.

■ There is every antecedent reason to say that they did not. They certainly contain no intimation of intention to subject pending foreclosure suits as a whole to the jurisdiction of the bankruptcy court; so far as appears, the state court may press such suits to judgment, may sell the property and distribute the proceeds; indeed this can hardly be questioned. If so, it would be altogether anomalous to divorce from the land itself the income which accrues pendente lite. Indeed, when a court takes possession of mortgaged land by its receiver, it in effect merely anticipates its final action, acting in harmony with the general axiom that equity regards as done what ought to be done; if all the necessary steps could be taken together in piepowder fashion, the property would be sold, the buyer would begin to receive the rents at once, and the mortgagee the interest upon the purchase price. The receivership is the nearest substitute; the rents are security just as the land is security from the time when the court intervenes; they become part of the mortgaged res because only so can the mortgagee be protected during the inevitable delay. For this reason it is extremely unlikely that when Congress left to the state courts jurisdiction over the land it should have intended to separate the rents. Indeed, the receiver is as much an arm of the court as the master whom it appoints to conduct the sale; it is as unwarranted an invasion of its power to compel the receiver to account as to compel the master. Either the bankruptcy should supersede the whole suit, as it does in the case of a winding

up, or it should not touch it at all; the tail goes with the hide. As Professor Moore has well said (Collier on Bankruptcy, 14th Edition, pp. 307–309), "Here it will be noted that the receivership is a mere incident of the lien or claim which the non-bankruptcy court had undertaken prior to bankruptcy and that the property, upon the institution of the proceedings was in custodia legis of the non-bankruptcy court. And it would appear that it was not the intent of clause (21) to change the established law in that respect."

The only even plausible objection appears to us to rest upon the exception of proceedings under Chapters X and XII, 11 U.S.C.A. §§ 501 et seq., 801 et seq. The argument drawn from this is that it shows that the section applies to those chapters and that it must therefore pro tanto include receivers in foreclosure. This is certainly true as to Chapter X because one of the grounds for an involuntary petition is the pendency of a foreclosure suit or possession by a mortgage trustee, though the mortgage must cover the "greater portion of the property of the corporation." § 131(3) and (4). Moreover, the "plan" in Chapter X—§ 216(1)—and the "arrangement" in Chapter XII—§ 461(1)—must include some modification of a valid mortgage. Yet this argument is not convincing, for there is nothing anomalous or inconsistent in saying that § 2, sub. a(21), when applied to proceedings under these chapters, includes foreclosure receivers, but does not when applied to "straight bankruptcy"—liquidation. Since the section merely granted a new remedy and was not intended to enlarge the jurisdiction of the bankruptcy court, the distinction was one which we should expect and which was indeed necessary. This is so because, even as to valid mortgages and other liens, proceedings under these chapters are supersessive, just as "straight bankruptcy" is supersessive as to state insolvency proceedings or "equity receiverships." The bankruptcy court should be able summarily to reduce to possession all property the interests in which it may have to adjust; .' is only when the court has no power to do so that a state court should be allowed to retain a custody already acquired; but there is every reason when it has not, that the state court's jurisdiction should be respected. A state court can foreclose as well as a bankruptcy court; indeed, it is presumptively better fitted to do so for it is more apt to be familiar with the questions involved. For these reasons we think that the words, "receivers" and "trustees," may be read distributively, covering those occasions for which the new remedy is appropriate; that is, those in which under the previous law the bankruptcy court had exclusive jurisdiction.

We are not sure what Congress meant by the added phrase: "agents authorized to take possession of or liquidate a person's property"; but whatever those words include, it does not disturb the argument, for they should be understood to subject to summary dispossession only those "agents" who hold property that must be administered in the bankruptcy proceeding. However, it must be confessed that consistently one would have expected the exception also to have included proceedings under § 77 to reorganize railroads, in which valid liens can be modified, § 77, sub. b(1), 11 U.S.C.A. § 205, sub. b(1). At first blush it is hard to see why the summary remedy granted should have been cut off at four months in such proceedings. Possibly these were forgotten in the drafting; possibly it was thought that the remedy would not be likely to be invoked in the case of railroads anyway, since they constitute a very special problem. But, whatever the reason, the omission offers no obstacle to our conclusion, for the exception as to Chapters X and XII remains explicable as it stands, even if consistently it should have been broader. For these reasons we conclude that § 2, sub. a(21), did not support the trustee's petition.

That being true, little need be added as to § 69, sub. d. The phrase, "receiver or trustee, not appointed under this Act [title]," is almost in the same words as § 2, sub. a(21), and the variance cannot have indicated any change in intent; as the House report said, the section was intended as a guide for "equity receivers." Report No. 1409, 75th Congress, First Session. It made them accountable to the bankruptcy court, whether or not the trustee moved to dispossess them under § 2, sub. a(21); it required them to file a schedule of their property; it even forbade their disbursing any money without the bankruptcy court's consent. If this was meant also to cover foreclosure receivers in "straight bankruptcy," a revolutionary change, quite needless and galling to the state courts' dignity, was too well hidden within what are at best very equivocal words.

Order affirmed.

CLARK, Circuit Judge (dissenting).

I think that, under the express provisions of the Chandler Act, now appearing as Bankruptcy Act, §§ 2, sub. a(21), 69, sub. d, 11 U.S.C.A. §§ 11, sub. a(21), 109, sub. d, as well as by virtue of its policy and purpose, this receiver is subject to the supervision of the bankruptcy court as to his allowances and disbursements. The contrary view is arrived at only by a most violent contraction of the statutory language to make it fit into a framework of supposedly clear prior case law. As will appear from the discussion hereafter, I find the earlier precedents not clear, but highly confused, as to the meaning of "receiver" in applying the earlier bankruptcy act. But in any event, I believe it is a mistake to approach a problem as to the scope of new bankruptcy provisions supplied by the Chandler Act with an attitude of assimilating them into pre-existing law. That act represents a full-scale overhauling of the several types of debtor proceedings. Where the sections are entirely new, broad, and, on the surface, at war with old law, I think it much better to assume that the meaning to be attributed to them is one which squares with the general purpose of the act, even if this should involve some departure from past case law.[1]

It is especially appropriate to approach § 2, sub. a(21), in this manner because of its unique nature. This paragraph is not quoted in its entirety in the opinion. It must, however, be considered in full, for it is not fairly represented by short excerpts. It is one of a considerable number of paragraphs conferring extensive jurisdiction on courts of bankruptcy. It authorizes such courts to "require receivers or trustees appointed in proceedings not under this Act, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control" to the bankruptcy receiver or trustee or to the debtor or other person entitled to it under an arrangement or plan under the act, "and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: Provided, however, That such delivery and accounting shall not be required, except in proceedings under chapters 10 and 12 of this Act, if the receiver or trustee was appointed, the assignment was made, or the agent was authorized more than four months prior to the date of bankruptcy." There follow important provisions as to the proceedings upon the accounting by virtue of which the bankruptcy court shall re-examine and determine the propriety and reasonableness of the receiver's disbursements to himself and to others for services and expenses; and "unless such disbursements have been approved, upon notice to creditors and other parties in interest, by a court of competent jurisdiction prior to" the bankruptcy proceeding, the court shall surcharge the receiver for excessive or improper charges.

Prior to 1938 there was absolutely nothing in the Bankruptcy Act authorizing this sort of action. Receivers, assignees, and trustees were replaced, but this was generally done on a theory that, since § 3, 11 U.S.C.A. § 21, made the appointment of such a person an act of bankruptcy, it was "necessarily implied" that the officer was to be displaced. Randolph & Randolph v. Scruggs, 190 U.S. 533, 536, 23 S.Ct. 710, 47 L.Ed. 1165; In re Watts, 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933. In this light, it is obvious that pre-existing law was limited by the necessity of relying on implications.[2] It seems a little strange, therefore, to interpret a statutory grant of power as if it allowed the court to do only directly what formerly could have been done by indirection without statutory authority.

---

[1] Consider, for example, that Adams v. City Bank & Trust Co. of Macon, 5 Cir., 115 F.2d 453, 134 A.L.R. 1215, certiorari denied 312 U.S. 699, 61 S.Ct. 739, 85 L. Ed. 1133, has been strongly criticized as an instance where previous law was hung onto in the face of a new wording of the statute. See 3 Collier on Bankruptcy, 14th Ed.1941, 911–916; 29 Calif.L.Rev. 522; 41 Col.L.Rev. 512; 36 Ill.L.Rev. 783.

[2] It has never even been settled that a foreclosure receiver is not a receiver under § 3. A dictum in Standard Accident Ins. Co. v. E. T. Sheftall & Co., 5 Cir., 53 F.2d 40, says that he is not; but in In re 211 East Delaware Place Bldg. Corp., D.C.N.D.Ill., 14 F.Supp. 96, Judge Evans, sitting as a district judge, said that he is. In Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, the court refused to answer the question. Under the rationale of displacement by implication, it was not even clear under previous law that a foreclosure receiver would not be displaced if appointed within four months of a petition in bankruptcy.

If the section is approached without such semi-historical preconceptions, it is at once seen that on its face "receivers" must include receivers in aid of foreclosure because of the proviso allowing for displacement of receivers where Chapters X and XII are involved, regardless of when they were appointed. Under § 131(3)(4) of Chapter X, 11 U.S.C.A. § 531(3)(4), an involuntary petition may be filed if, as a substitute for an act of bankruptcy under § 3, "an indenture trustee or a mortgagee under a mortgage is, by reason of a default, in possession" or "a proceeding to foreclose" is pending. And under Chapter XII, which deals only with real property, the only likely kind of receiver is one to collect rents and profits in foreclosure.[3] The opinion avoids this difficulty by reading "receivers" and "trustees" distributively to cover those receivers which must be included, but excluding all others which under previous law were not subject to displacement.

This "distributive" reading is a deceptively simple solution. Here the essentially conflicting nature of the earlier precedents takes on increased importance. For this reading results in giving "receiver" several meanings in addition to those which the majority concedes are required by the context of § 2, sub. a(21), itself. For example, a receiver appointed under a creditor's bill was displaced if appointed within four months of bankruptcy, Miller v. Potts, 6 Cir., 26 F.2d 851; Blair v. Brailey, 5 Cir., 221 F. 1, certiorari denied 238 U.S. 634, 35 S.Ct. 938, 59 L.Ed. 1499, but not if appointed more than four months before. Blair v. Brailey, supra. The rationale was that displacement followed by implication from the fact that § 67, 11 U.S.C.A. § 107, outlawed the lien as a fraudulent transfer.[4] Also, a receiver appointed under a stockholder's bill could be replaced no matter when he was appointed, Miller v. Potts,

supra; In re Knox Consol. Coal Co., D.C.S.D.Ind., 50 F.2d 248. Must we now read "receiver" as applying to all displacements under the previous rule regardless of the four months' limitation, or do we limit ourselves to reading it to include only such previous law as is not otherwise necessarily altered? If so, § 2, sub. a(21), has become an empty shell indeed.

There are other types of receiver which must be conjured with. Under the majority opinion, receivers collecting rents under valid mortgages are not covered by § 2, sub. a(21). Suppose the mortgage is invalid under §§ 60, 67, or 70, 11 U.S.C.A. §§ 96, 107, 110? If this differentiation is read into the section, then a broad grant of jurisdiction depends on the myriad technical rules of validity arising out of §§ 60, 67, and 70. Then there are peculiar sorts of receivers whose status was determined under previous law, such as the temporary receiver appointed pending judicial determination of a charge that an indenture trustee had committed fraud. In re Greyling Realty Corp., 2 Cir., 74 F.2d 734, certiorari denied Troutman v. Compton, 294 U.S. 725, 55 S.Ct. 639, 79 L.Ed. 1256. Martin Act (General Business Law N.Y., Consol. Laws, c. 20, § 352 et seq.), receivers raise a peculiar problem. Under our decision in Elfast v. Lamb, 2 Cir., 111 F.2d 434, we said that no act of bankruptcy was committed when a Martin Act receiver was appointed. Under previous rules, that would preclude his displacement. But in In re Koch, 2 Cir., 116 F.2d 243, certiorari denied Hirson v. Koch, 313 U.S. 565, 61 S.Ct. 941, 85 L.Ed. 1524, we intimated that a Martin Act receiver might be displaced because he was a receiver under § 2, sub. a(21).

The distributive reading thus becomes subject to such exceptions as get written into § 2, sub. a(21), specifically. A lot of litigation will have to come along before

---

[3] It is said that § 2, sub. a (21), is not complete because it does not include receivers in railroad receiverships in the proviso eliminating the four months' restriction as to Chapters X and XII. But under § 77, sub. a, 11 U.S.C.A. § 205, sub. a, the court is given "exclusive jurisdiction of the debtor and its property wherever located," and under § 77, sub. i, there is a complete enumeration of the steps to be taken to terminate a receivership once a petition under § 77 is filed. It should also be noted that the earlier sections of the Bankruptcy Act have little or nothing to do with railroads, because under § 4, 11 U.S.C.A. § 22, they are excluded from the class of persons who may become bankrupts.

[4] Of course, this four months' differentiation is written into § 2, sub. a (21), and it may be said that "receiver" need not have two meanings to accomplish any differentiation. But if some differentiations are covered into the section, it becomes less justifiable to attempt surreptitiously to cover in other differentiations by reading "receivers" and "trustees" distributively.

we ever know who is a receiver and who is not under § 2, sub. a(21).[5] This is the surer because under modern codes generally and New York law in particular an "equity receivership" is not a self-defining term, but is a pure anachronism.[6] A broad, simple provision will soon become encrusted with so many exceptions that no one will ever be sure just what the bankruptcy court's powers are. I prefer to read § 2, sub. a(21), as it is written and thus settle the issue simply.

It should be noted further that if the statutory term is to be limited to "equity" receivers, and if these are those appointed either to reorganize or to wind up corporations (what else can they mean?), then the provision was already practically out of date when it was written in 1938; for, as is well known, 77B, 11 U.S.C.A. § 207, had brought corporate reorganization practice into the bankruptcy aegis.

Section 2, sub. a(21), also speaks of "agents authorized to take possession of or to liquidate a person's property." The majority opinion concedes doubt as to what this means, but is content again to rely on general bankruptcy rules apart from the section itself. If litigation ad nauseam will be necessary to get "receivers" and "trustees" defined, the situation will be even worse with respect to "agents," for this is a kind of person less well known than receivers. The Senate Committee's Report on the Chandler Act referred to them as "custodial or liquidating agents." Sen. Rep. No. 1916, 75th Cong., 3d Sess., 1938, 12. This suggests the wide sweep of the statute, for "custodial agents" certainly connotes agents of limited functions. But must we go on for years trying to find out which custodial or liquidating agents are covered by § 2, sub. a(21), and which are not? Again, I should prefer to read the section as written, rather than start a process of jerry-building exceptions. This is the conclusion reached in the very recent case of In re Rosenberg, 7 Cir., 128 F.2d 924.

The majority opinion asserts, however, that this distinction so drawn is based on a simple proposition that anyone in possession of property subject to the exclusive possession of the bankruptcy court is displaced, and that any other is not. Of course, this is the very thing which § 2, sub. a(21), tells us; it is a section giving jurisdiction to the bankruptcy court. But leaving that aside, other objections exist. In the first place, it is no simple matter to know whether or not exclusive jurisdiction exists in the bankruptcy court. I have already alluded to the problem of the invalid mortgage. The force of § 2, sub. a (21), therefore, seems to me to be to sweep all such property into the bankruptcy court for determination of its status. Secondly, it is not at all settled that the bankruptcy court's power of inhibiting foreclosures begun after bankruptcy, Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645, cannot be extended back four months. Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060, held that where a receiver had been in possession more than four months before bankruptcy, he could not be displaced. Thus, the Supreme Court left undecided the status within four months. Since the rationale of the cases springs from the rule of comity that the court first obtaining jurisdiction retains it, Straton v. New, supra, 283 U.S. at page 322, 51 S.Ct. 465, 75 L.Ed. 1060, the fact that § 2, sub. a(21), grants the bankruptcy court power to extend its jurisdiction backward four months would seem to answer the very question left by the Isaacs and Straton cases. Cf. Florence Trading Corp. v. Rosenberg, 2 Cir., 128 F. 2d 557, 561.

Further, I think there are many strong reasons of public policy for construing § 2, sub. a(21), to allow displacement of any person in possession other than the secured creditor himself. The whole purpose of bankruptcy is orderly equitable distribution of a debtor's property. In ordinary bankruptcy, to be sure, Congress has left

---

[5] Compare discussion of receiver in supplementary proceedings in In re Clement-Rowe Press, D.C.S.D.N.Y., 42 F.Supp. 209.

[6] Under New York statutes, receivers may be appointed in so many different forms and types of suits as to indicate that this is a general remedy for the preservation of all types and conditions of property—as, indeed, it should be. Needless to say, the term "equity re-ceivership" does not appear. If it be assumed that this refers to a receiver in a proceeding for the dissolution or supervision of the affairs of a corporation, the remedies here are also carefully defined by statute in the General Corporation Law; the main provision stating types of corporate receivers includes foreclosure receivers indiscriminately with the rest. N.Y.General Corporation Law, Consol.Laws, c. 23, § 150.

secured property outside the distribution hierarchy. But we need by no means infer from this that assets of the debtor must be eaten up by exorbitant charges for administering secured assets outside the bankruptcy court. If the cost of a foreclosure receivership were borne by the mortgagee and the equity fully turned over to the bankruptcy court, I would not be quite so solicitous of the bankruptcy power.[7] But to say that unsecured creditors cannot protect their interests by invoking the bankruptcy power in supersession of non-bankruptcy liquidation is to fritter away some of the protection which bankruptcy was designed to afford. Compare § 314, 11 U.S.C.A. § 714, of Chapter XI and § 614, 11 U.S.C.A. § 1014, of Chapter XIII, which allow stay of the commencement or continuation of proceedings to enforce liens, even though neither of these chapters provides for alteration of secured debts. Cf. Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658, 660. It is anomalous to say that unsecured creditors' rights can be protected thus, but that they cannot be protected by a cutting down of exorbitant expenses of foreclosure. It should also be noted that even if we assume that § 2, sub. a(21), gives the trustee power of sale over secured property taken over by the bankruptcy court, secured creditors might be a little delayed in realizing on their security, but otherwise would lose nothing. The trustee's only interest is to obtain a sale price over and above the indebtedness, and it is highly unlikely that he would request possession otherwise.

Moreover, it is confusing and unreal to regard a state receivership as essentially the mortgagee's remedy designed as a kind of substitute for the immediate or piepowder relief to which a mortgagee should be entitled. For under modern law the mortgagee is far from entitled to immediate relief; and the receiver is an officer of court with duties to others than merely the secured creditor alone. This case is striking proof of that fact. Here a purchaser of a junior lien eventually paid off the mortgage, and hence the receiver, as it turned out, should have been working for the substantial interests of the bankruptcy creditors, though the bankruptcy court is now held to have no control over his disbursements, and powerless to prevent him from paying himself and his attorney very well and leaving only a deficit for the estate.

I have discussed § 2, sub. a(21), at this length partly because the majority opinion chiefly relies upon it, and partly because an understanding of its philosophy aids in a correct conception of § 69, sub. d. But so far as this case is concerned § 69, sub. d, is controlling, for it covers the case of acts by a state receiver after the bankruptcy petition is filed and here every collection of the receiver was after bankruptcy. It reads: "Upon the filing of a petition under this Act, a receiver or trustee, not appointed under this Act, of any of the property of a bankrupt shall be accountable to the bankruptcy court, in which the proceeding under this Act is pending, for any action taken by him subsequent to the filing of such bankruptcy petition." And he must file a schedule setting forth a summary "of the property in his charge" and of the liabilities of the estate, and a sworn statement of his administration, and he "shall not make any disbursements or take any action in the administration of such property without first obtaining authorization therefor from the bankruptcy court."

Section 69, sub. d, was another completely new section of the Act, and my observations above apply with even greater force here. In fact, even on the assumption that § 2, sub. a(21), covers only property subject to the exclusive jurisdiction of the bankruptcy court and that mortgaged property is excluded, I do not see how § 69, sub. d, can be ignored. It speaks of a receiver "of any of the property of a bankrupt"; it covers action subsequent to the filing of a petition in bankruptcy; it does not deprive a state court of jurisdiction. All it does is effectively protect the bankruptcy court's interest in property administered in other proceedings.

The fact that the House Committee in its report said that this provision was designed to make it possible for "equity receivers" to know how to proceed with

---

[7] Though even here, I think the bankruptcy court should have some power, within the limits of four months, to see to it that the bankrupt's equity is not frittered away by a disadvantageous foreclosure sale. See Isaacs v. Hobbs Tie & Timber Co., supra; Lincoln-Alliance Bank & Trust Co. v. Dye, 2 Cir., 108 F.2d 38; In re Franklin Garden Apartments, Inc., 2 Cir., 124 F.2d 451; In re White Plains Ice Service, Inc., 2 Cir., 109 F.2d 913.

further administration between filing of an involuntary petition and adjudication certainly does not state an express or clear limitation. Its purpose applies just as much to a receiver of "any of the property of a bankrupt" as to a receiver liquidating a corporate estate.[8]

Since, as stated, every move made by the receiver in the case before us followed the filing of the petition, § 69, sub. d, must apply, no matter what limitations we may wish to read into § 2, sub. a(21). Under § 2, sub. a(21), the bankruptcy court has power to order a turnover, which it presumably might not do in some instances. But § 69, sub. d, is apparently mandatory. By the terms of the provision, all of the rents collected here were without authorization. Presumably the bankruptcy court could deny the receiver any compensation for having proceeded without first submitting to the court's jurisdiction. At any rate, as I view it, he is clearly subject to the supervision of the bankruptcy court. True, his accounts were actually passed upon by the state court, but this was long after bankruptcy and really by sufferance or delay of the bankruptcy court.

I cannot see that it is any answer to say that this exertion of federal power would be "galling" to state courts. Any exertion of federal power is "galling" to a state if one wishes to be epithetical. If one starts with the epithet, Congress is confronted at once with a presumption against it which can be dispelled only by the most explicit language. When it is remembered that the federal power over bankruptcy legislation is an enumerated power of the Constitution, it is unseemly to insist on indulging the feelings of state courts. Cf. Prudence Realization Corp. v. Geist, 62 S.Ct. 978, 86 L.Ed. ——; and see 49 Yale L.J. 1090 for a discussion of the cases holding state insolvency acts suspended ipso facto by the Bankruptcy Act. Experience has taught us the necessity of one uniform national system of bankruptcy; it is too late to save state pride here—if, indeed, it is actually engaged—by minor and irritating limitations upon the full relief which should lie in the hands of the bankruptcy courts.

---

8 Accurately considered, of course, the words "equity receivers" adequately describe any of the various receiverships in New York, note 6, supra. Even if the Committee had in mind the more limited corporate receiverships, it should be noted that it was affirming a general proposition of applicability, not negating other unmentioned things. This is made even clearer by the briefer statement in the Senate Committee Report, Sen.Rep.No. 1916, 75th Cong., 3d Sess., 1938, 18; and see also its more inclusive definition of the coverage of § 2, sub. a (21), cited above. Ibid. 12. The House Report also said of this that it gave to bankruptcy courts much needed power over the administration of equity receiverships, assignments for the benefit of creditors, "and the like." H.R.Rep. No. 1405, 75th Cong., 1st Sess., 1937, 20.