361 F.2d 610
 In the Matter of SOUTH JERSEY LAND CORP., Debtor. Bank of
Commerce, Appellant.
In the Matter of HYDROCARBON CHEMICALS, INC., Hyspec
Container Corp., Berkeley Shore Estates, Burlington
Development Co., Hydrocarbon Realty Development Co., Lanoka
Harbor Land Co., Inc., and Lanoka Investment Co., Debtors.
Bank of Commerce, Appellant.
 Nos. 15556 and 15557.
 United States Court of Appeals Third Circuit.
 Argued Feb. 4, 1966.
Decided May 26, 1966.
 
 Walter J. Bilder, Newark, N.J. (Bilder, Bilder, Silver & McCurley, Newark, N.J., of counsel, on the brief), for appellant.
 Michael R. Griffinger, Newark, N.J. (Crummy, Gibbons & O'Neill, Newark, N.J., of counsel, on the brief), for appellees.
 Before STALEY, SMITH and FREEDMAN, Circuit Judges.
 STALEY, Chief Judge.
 
 
 1
 These appeals arise out of two separate orders, which, although entered in two distinct proceedings involving two separate reorganizations (the 'Hydrocarbon' reorganization in No. 15557 and the 'South Jersey' reorganization in No. 15556), apply to the same piece of realty on which the appellant holds a mortgage. Despite the non-existence of any substantial factual dispute, ascertainment of the essential facts necessary to a proer disposition of these appeals has perplexed the court. The briefs, appendices,[1] and oral argument have shed little light on this problem. Counsel, however, have been most helpful in making further stipulations to the record on appeal.
 
 
 2
 The facts can be briefly stated, and we summarize them as follows: Virtually all the parties undergoing reorganization in both proceedings are engaged in a massive land development project in New Jersey. The Berkeley Township project involved the development of some 3000 home sites, the building of homes and the development of incidental properties. In December of 1960, Berkeley Shore Estates, the primary developer (and party to the Hydrocarbon reorganization), sold two pieces of property to the South Jersey Land Corporation. One parcel, containing some 600 lots, had been or was undergoing subdivision. The other was a proposed shopping center site, through which all potential residents of the development would have to pass as a matter of ingress and egress from their homes to the major highways in the vicinity.
 
 
 3
 In the following year Hydrocarbon Realty Development Company, a subsidiary of Hydrocarbon Chemicals (and also a party to the Hydrocarbon reorganization), acquired a one-third interest in the South Jersey Land Corporation by purchasing ten shares of its stock for $30,000.
 
 
 4
 On May 31, 1963, South Jersey executed and delivered to the Bank of Commerce a mortgage covering the shopping center property to secure anticipated advances in the amount of $75,000. On the same day, South Jersey conveyed the shopping center property to Jersey Shore Shopping Center, Inc. No consideration was given for the transfer. Apparently because of recording difficulties (the deed to Jersey Shore was recorded on June 3, 1963, whereas the previously executed mortgage was not recorded until June 5, 1963), the shopping center was deeded back to South Jersey on june 21, 1963.
 
 
 5
 Prior to the reconveyance of the shopping center back to Jersey Shore by South Jersey, an interesting development occurred. Berkeley Shore Estates (a subsidiary of Hydrocarbon Chemicals) acquired a two-ninths interest in the South Jersey Land Corporation, thus giving Hydrocarbon a controlling five-ninths interest in South Jersey. It should also be noted that at this time Hydrocarbon also held a one-third interest in the Jersey Shore Shopping Center.
 
 
 6
 Once the shopping center property had been deeded back to South Jersey, the May 31st mortgage between South Jersey and the Bank of Commerce was re-executed and re-recorded on July 6th and 12th respectively. After the mortgage had been recorded for the second time, the property was once again conveyed to Jersey Shore.[2]
 
 
 7
 Hydrocarbon Reorganization-- Appeal in No. 15557.
 
 
 8
 The Hydrocarbon proceeding commenced on July 10, 1963, with the filing of a petition for an arrangement under Chapter XI of the Bankruptcy Act. On March 17, 1964, a petition for reorganization under Chapter X was filed. The seven corporations recited in the caption herein were made parties to that reorganization.
 
 
 9
 On April 14, 1964, the appellant herein, Bank of Commerce, secured an order of execution on the shopping center property in a foreclosure proceeding in the New Jersey Superior Court. Both Jersey Shore (the record title holder) and South Jersey (the mortgagor in default) were parties to that foreclosure proceeding. The New Jersey court ordered that the shopping center property heretofore described be sold at a sheriff's sale. On May 19th, the attorneys for the trustees of the Hydrocarbon debtors petitioned the district court for an order enjoining the sale of the shopping center property. An ex parte order to that effect was issued on the same day. On June 18, 1964, the Bank of Commerce moved to have the injunction dissolved. The appeal at No. 15557 followed the district court's denial of that motion on June 30, 1965.
 
 
 10
 The sole issue raised on this appeal is that the district court lacked jurisdiction to enjoin the foreclosure sale. Appellant contends that the property owned by Jersey Shore (or South Jersey)[3] is not within the jurisdiction of a reorganization court as defined in 111 of the Bankruptcy Act, 11 U.S.C. 511: 'Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located.'
 
 
 11
 Simply stated, appellant's argument boils down to this: the mortgaged premises are the property of Jersey Shore (or South Jersey) and not that of Hydrocarbon and/or its subsidiaries. It goes on to state that the mere fact that Hydrocarbon owns a substantial number of the shares of Jersey Shore (and South Jersey) is not sufficient to make the shopping center site the property of Hydrocarbon. Its argument rests on the well established theory of distinct corporate entities.
 
 
 12
 Does the meaning of the word 'property' in 111 transcend the well established principle of distinct corporate personalities? Realizing that the answer must depend on each particular case, we believe as a general rule it does not. Though in the past this court has not hesitated to disregard the traditional theory of separate entities, Cf. In re Pittsburgh Rys., 155 F.2d 477, 483-485 & n. 15 (C.A.3), cert. denied, philadelphia Co. v. Guggenheim, 329 U.S. 731, 67 S.Ct. 89, 91 L.Ed. 632 (1946)[4] to yield to that temptation here would be unwarranted[5] and might create unfavorable precedent for future cases.[6] Our position in this regard is consistent with the Supreme Court's admonition 'that Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate.' Callaway v. Benton, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949).
 
 
 13
 Since the power to stay proceedings against the debtor or its property, 11 U.S.C. 513, 516(4), 548, is necessarily limited by the jurisdiction of the reorganization court, it follows that a stay may not be issued where the mortgage foreclosure proceeding is brought against property which is not the debtor's. 6 Collier, Bankruptcy (14th ed.) P3.32 at 753; 11 Remington, Bankruptcy 4376 at 62. There is also precedent to support the proposition that a reorganization court may not stay a proceeding involving property owned by a corporation in which the debtor is a stockholder. In re Adolf Gobel, Inc., 80 F.2d 849 (C.A.2, 1936); In the Matter of Copper Canyon Mining Co., 156 F.Supp. 535 (D.Del., 1957).
 
 
 14
 South Jersey Reorganization-- Appeal in No. 15556.
 
 
 15
 The Chapter X petition in the South Jersey Land Corporation proceeding was filed on February 23, 1965, a year and one-half after the questionable conveyance and almost one year after the New Jersey court had ordered the shopping center property to be sold. Two days after the petition for reorganization was filed, the trustee filed a petition on a rule to show cause why the shopping center property should not be reconveyed to South Jersey. At the hearing held on the rule to show cause, the shareholders of Jersey Shore appeared and testified that there was no consideration passed for the May 31, 1963, conveyance; they also stated that they had no objection to the reconveyance.[7]
 
 
 16
 The appellant was not represented at the hearing on the rule to show cause. However, it appeals from the district court's order requiring the property to be conveyed to South Jersey. Appellant's standing before us is clear; it has a legally protected interest, see Tennessee Electric Power Co. v. T.V.A., 306 U.S. 118, 137-138, 59 S.Ct. 366, 83 L.Ed. 543 (1939), in obtaining freedom to foreclose on the property covered by the mortgage it holds. Since the South Jersey petition for reorganization was approved on February 24, 1965, the effect of a reconveyance to South Jersey is an automatic stay of the foreclosure proceedings. 11 U.S.C. 548; see In re Maier Brewing Co., 38 F.Supp. 806 (S.D.Calif.1941).
 
 
 17
 As in the first appeal, appellant's objection is that the district court lacked jurisdiction to order a reconveyance. Appellant does not maintain that a reorganization court does not have the power to set aside fraudulent conveyances. Bankruptcy Act 102, 67(d), 70(e). Nor does it argue that the conveyance from South Jersey to Jersey Shore was not fraudulent under the Act and applicable state law. N.J.Stat.Ann. 25:2-7 to 25:2-19. Its argument is simply this: Though the district court would normally have the power to set aside, declare null and void or order a reconveyance of fraudulently transferred property, it cannot do so where the property in question is the subject of an in rem proceeding in a state court prior to the filing of the reorganization petition.
 
 
 18
 Appellant relies primarily on In re River Edge Estates, Inc., 53 F.Supp. 286 (D.N.J.), aff'd, 139 F.2d 840 (C.A.3, 1943), cert. denied sub nom. Vescelius v. Wedeen, 321 U.S. 792, 64 S.Ct. 791, 88 L.Ed. 1082 (1944), for the proposition that a court which first acquires jurisdiction of a res in an in rem proceeding cannot be compelled to yield to a bankruptcy court. This court adopted that principle in affirming Judge Smith's opinion; we reaffirm that principle here. However, appellant has failed to note a distinction which is most significant. Professor Moore has most aptly described it:
 
 
 19
 '* * * It should be emphasized that in ordinary bankruptcy (as distinguished from reorganization) if a state court action is one in rem as for a mortgage foreclosure * * * the commencement of the state action before the filing of the bankruptcy petition gives the state court exclusive jurisdiction over the property. See Bryan v. Speakman (53 F.2d 463 (C.A.5, 1931), cert. denied, 285 U.S. 539, 52 S.Ct. 312, 76 L.Ed. 932 (1932)); Emil v. Hanley (C.C.A.2d, 1942) * * * 130 F.2d 369, aff'd (In re John M. Russell) (1943) 318 U.S. 515 (63 S.Ct. 687, 87 L.Ed. 945) * * *; 1 Collier on Bankruptcy (14th ed. by Moore & Oglebay) P2.78; 4 Collier on Bankruptcy, op. cit. supra, P70.06. In corporate reorganization, on the other hand, the reorganization court is given the power to stay the enforcement of a lien upon the property of the debtor, 116(4) (11 U.S.C. 516(4)), and to require a receiver in possession of property, including a mortgage foreclosure receiver, to turn over the property to the reorganization trustee, 2a(21), 257. Emil v. Hanley, supra; 6 Collier on Bankruptcy, op. cit. supra, PP3.03, 3.10, 14.03. The reason why the Bankruptcy Act makes this distinction is simple. Ordinary bankruptcy contemplates liquidation for the benefit of unsecured creditors. The mortgagee is a secured creditor and by his foreclosure action has begun liquidation of the property subject to his lien. Hence the mortgage foreclosure court having assumed jurisdiction over a res for purposes of liquidation is allowed to retain its jurisdiction; and the foreclosure receiver (as distinguished from a general equity receivership) is in aid of the liquidation of the mortgage lien for the benefit of the secured creditor. Corporate reorganization on the other hand contemplates a rehabilitation and this usually necessitates dealing with secured debt. To that end the reorganization court is given power to supersede prior in rem proceedings and thus compel creditors, whether they be secured or unsecured, that would take under those proceedings to take under the reorganization plan.' 1A Moore's Federal Practice P0.215 at 2510, n. 6.
 
 
 20
 We believe the above clearly delineates the power of a reorganization court. Since the district court's determination that the conveyance from South Jersey to Jersey Shore was fraudulent is not questioned, it is clear that the court acted within its jurisdiction in ordering a reconveyance.
 
 
 21
 In summary, we should point out that our affirmance of the order in the South Jersey appeal has the same effect as the order enjoining foreclosure in the Hydrocarbon appeal, which we will reverse. This is so simply because the reconveyance of the property to South Jersey automatically results in a stay of the foreclosure proceeding by virtue of 148 of the Bankruptcy Act, 11 U.S.C. 548. See In re Maier Brewing Co., supra.
 
 
 22
 The order in No. 15556 will be affirmed; the order in No. 15557 will be reversed.
 
 
 
 [1]
 Rule 24(2)(e) requires that the appendix shall contain those parts of the record material to the questions presented. Though we realize the difficulties encountered by counsel in this case (where the litigation is continuing in the district court), we wish to emphasize the necessity of adherence to this rule
 
 
 [2]
 The facts regarding the land transactions are taken primarily from the complaint in foreclosure which the parties have stipulated as part of the record on appeal
 
 
 [3]
 We deal with this argument in the alternative since, as will later be indicated, there appears to be no dispute that the property was fraudulently conveyed
 
 
 [4]
 The language of Judge Goodrich is most appropriate:
 'The effect of a grant of a corporate charter to a group of individuals is described in many ways in figurative language. Perhaps the favorite phrase is the 'corporate veil' which courts are supposed to pierce from time to time as circumstances require. We think a more accurate figure is that of a cloak which on some occasions is to be worn and on other occasions is to be stripped off. To talk legal effect instead of fanciful figures of speech, the corporate fiction can be given effect in some instances and with perfect consistency, disregarded in other instances. Courts have recognized this.' 155 F.2d at 484.
 
 
 [5]
 The classic examples of where the 'veil' has been 'pierced' or the 'cloak' 'stripped off' are set forth in 1 Fletcher, Cyclopedia Corporations 41 et seq.; see also Anaconda Building Materials Co. v. Newland, 336 F.2d 625 (C.A.9, 1964)
 
 
 [6]
 As a general rule a reorganization court should not be empowered to stay proceedings brought against a corporation or property of a corporation in which the debtor owns stock. If we could not resolve the problem here confronting us by the disposition we make in the second appeal, discussed infra, the equities of the instant appeal might compel us to a different conclusion. For if that were the case, the existence of a fraudulent transfer between a corporation in which the debtor held a controlling interest and one in which it held a one-third interest would constitute extremely important factors for our consideration
 
 
 [7]
 The only party at the hearing to object to the reconveyance was the Glen Rock Lumber & Supply Company. None of the objections it raised are argued here