**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**In re Petition of NEW YORK STATE URBAN DEVELOPMENT CORP.**

**No. 70-347.**

United States District Court,
E. D. Pennsylvania.
May 10, 1972.

1324

Blank, Rome, Klaus & Comisky by Marvin Comisky, and Norman L. Holmes, Philadelphia, Pa., for Trustees, Penn Central.

Tate & Ervin by W. Bourne Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, Trustee New York, New Haven & Hartford RR.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First Natl. City Bank of N.Y.

Ballard, Spahr, Andrews & Ingersoll by Frederic L. Ballard, Philadelphia, Pa., for Girard Trust Bank and Morgan Guaranty Trust Co.

Morgan, Lewis & Bockius by John N. Schaeffer, Jr., Philadelphia, Pa., for The Fidelity Bank.

Kelley, Drye, Warren, Clark, Carr & Ellis by Edward Roberts, III, New York City, for Mfg. Hanover Trust Co. as trustee under Debtor's gold bond mortgage of 1897.

Dechert, Price & Rhoads by Matthew J. Broderick, Philadelphia, Pa., for Penn Central Co.

Willkie, Farr & Gallagher by Walter H. Brown, Jr., New York City, for Institutional Investors, Penn Central Group.

Sage, Gray, Todd & Sims by Herschel E. Sparks, Jr., New York City, for New York State Urban Development Corp.

OPINION AND ORDER NO. 706

FULLAM, District Judge.

A petition (Document No. 1176) filed by the New York State Urban Develop-

ment Corp. (hereinafter "UDC") involves one of several instances in which, before bankruptcy, the Debtor sold real estate, obtained and spent the proceeds, but failed to obtain releases of the property from the liens of various railroad mortgages.[1]

In December of 1969, the Debtor conveyed to UDC, by quitclaim deed, a large tract of land in Niagara Falls, New York. The property was subject to three railroad mortgages, which will be referred to herein as the Hudson River Mortgages. UDC made settlement, and paid the full purchase price, in reliance upon an indemnity letter from the Debtor, in which it was represented that the Debtor had requested, and expected to obtain, releases of the property from the three mortgages. After settlement, UDC proceeded to make substantial improvements to the property, and has committed additional millions of dollars for the construction of housing units. However, to date, no releases from the mortgages have been issued by the indenture trustees.

The Hudson River Mortgages contained provisions, typical in railroad financing, authorizing the Debtor to sell off real property no longer needed in the operation of the railroad, so long as the proceeds were devoted to "additions and betterments" to the remaining property subject to the liens of the mortgages. The property sold was to be released from the liens of the mortgages upon delivery to the indenture trustees of either the proceeds of the sale, or adequate documentation certifying that additions and betterments to remaining property subject to the mortgage had been made in an amount at least equal to the sale price. It was the customary practice, as between the Debtor and the indenture trustees of its various mortgages that, if the proceeds of sale were deposited with the indenture trustees, the proceeds would routinely be released upon receipt of certification of additions and betterments; or, that certification of additions and betterments would be accepted in lieu of deposit of the proceeds; and in either case, the property sold would routinely be released from the liens of the mortgages.

With respect to the Hudson River Mortgages, there is a factual dispute in the record as to whether, as contended by the Trustees of the Debtor, the Debtor was entitled to credit for additions and betterments no matter when they were made; or, as contended by the indenture trustees, only "fresh" additions and betterments, made after the sale in question, could be used by the Debtor in obtaining releases. It is unnecessary to resolve this dispute, since it is clear that the Debtor has certified an adequate amount of additions and betterments which occurred after the sale to UDC.[2]

UDC's petition seeks relief in the alternative: either (1) an order declaring that the Debtor's estate is subject to a constructive trust in favor of UDC in the amount of the purchase price paid for the property by UDC, and directing immediate payment (presumably, in order to enable UDC to pay this sum to the indenture trustees in exchange for releases of the mortgages); or (2) an order of specific performance, directing the indenture trustees to execute and deliver releases of the mortgages in exchange for the tendered certifications of additions and betterments. The latter claim for relief is asserted, apparently, on the theory that UDC is a third party beneficiary, *pro tanto*, of the indenture trustees' obligations to the Debtor under the provisions of the mortgages.

When UDC's petition was originally filed, formal certification of additions and betterments had not been completed.

---

1. It appears that there are 162 other similar situations, involving sales totalling more than $4 million.

2. The sale price was $346,000. Post-sale and pre-bankruptcy additions and betterments totalling $429,538 have been certified (see affidavit attached to Order No. 476).

In conformity with Order No. 422 herein, the Debtor has since completed this documentation (see Order No. 476), and has properly certified additions and betterments made to remaining property subject to the liens of the Hudson River Mortgages after the date of the sale and prior to June 21, 1970.

The Trustees of the Debtor have joined in UDC's request for relief to the extent that they seek an order directing the indenture trustees to issue releases; pursuant to Order No. 422, the Trustees' response to UDC's petition is treated as a petition by the Trustees of the Debtor to compel the indenture trustees to execute and deliver the required releases.

The indenture trustees assert that this Court lacks jurisdiction to grant any of the relief requested by either UDC or the Trustees. Alternatively, they contend that they cannot be required to furnish releases except in exchange for a cash deposit in the appropriate amount, and that the appropriate amount would be the present value of the property sold, as improved by UDC, rather than the original sale price.

In order to determine the proper extent of this Court's jurisdiction, it is first necessary to analyze the various claims asserted, and the precise legal relationship between the parties.

■ The basic problem—sales of individual parcels of property subject to blanket mortgages, and failure on the part of the seller-mortgagor to pay for and obtain releases from the blanket mortgages—is not a new one. For example, similar situations arise with unfortunate frequency in residential subdivision financing. *See* Storke and Sears, Transfer of Mortgaged Property, 38 Corn.L.Rev. 185 (1953). Ultimately, the resolution of these problems, at least in part, derives from the application of the doctrine of marshalling. *See* Glenn, Mortgages, ¶¶289–299.1 (1943); Osborn, Mortgages, ¶¶286–92 (1970 ed.); 4 Pomeroy, Equity Jurisprudence, ¶1224.3 (5th ed. 1941). Briefly stated, the doctrine of marshalling confers upon the grantee in such situation an equitable right to require the mortgagee to seek satisfaction of the underlying obligation from the mortgagor's remaining properties which are subject to the blanket mortgage, before resorting to the premises conveyed. This equitable right on the part of the grantee is, of course, independent of and in addition to its rights against the grantor-mortgagor.

Thus, in the present case, UDC has valid claims against the Debtor arising by virtue of the indemnification agreement, and also has the right to insist that there be no execution against UDC's property unless and until all other property of the Debtor subject to the mortgages has been exhausted.

Moreover, the peculiar nature of railroad mortgages gives rise to additional rights and obligations. By their very nature, railroad mortgages are intended to constitute liens upon operating railroad properties. Railroad mortgage financing necessarily contemplates a greater degree of flexibility and fluidity than is characteristic of ordinary mortgage financing. It is in the best interest of the mortgagees, as well as the mortgagors, that property no longer needed in the operation of the railroad be disposed of, and the proceeds reinvested in additional useful property, or in improvements. It is not within the contemplation of the parties to railroad mortgages that the mortgages will be repaid through piecemeal liquidation of the mortgaged property.

Hence, it is not surprising that the Hudson River Mortgages here involved contain provisions which not only make it possible for the mortgagor to dispose of surplus real estate, but which specifically provide that the purchasers of such surplus real estate are under no obligation to see to the proper application of the purchase money; and that the proceeds from such sales are not required to be applied in reduction of the mortgage debt, but rather are to be reinvested in additions and betterments. These

provisions recognize the desirability of making surplus property readily marketable, in order to insure that the value of the mortgagees' security will not be eroded through obsolescence. The plain intent of the mortgage provisions mandates the conclusion that, so long as the sale price is adequate, and the cost of the additions and betterments to remaining mortgaged property is accurately and fairly stated, both the mortgagor and the mortgagees are benefitted when the proceeds of sales are devoted to additions and betterments.

Accordingly, the most that could have been required by the indenturer trustee in the UDC transaction would have been the temporary deposit of the sale proceeds with the indenture trustees in escrow. In that event, the indenture trustees would have been required forthwith to execute and deliver releases of the UDC property from the liens of the mortgages, and thereafter would have been required to return the proceeds to the Debtor in exchange for the certified additions and betterments. Indeed, interestingly enough, the present contention of the indenture trustees that only "fresh" (i. e., post-sale) additions and betterments could form the basis for the release of the proceeds from escrow serves to emphasize the fact that the mortgages contemplate contemporaneous release of the property sold, rather than postponement of the releases until completion of the additions and betterments.

It should also be noted that, under the terms of the mortgages, the decision as to whether the property could or should be sold, and as to what additions and betterments should be made, rests entirely with the mortgagor; the consent of the mortgagee is not required. And, as mentioned previously, there was no obligation on the part of the purchaser to see to the proper application of the purchase money.

From the foregoing, it can be seen that, before bankruptcy, a court of equity having jurisdiction over the parties and the subject matter would un-

doubtedly have required the indenture trustees to execute and deliver the appropriate documents releasing the UDC property from the liens of the Hudson River Mortgages. The crucial issues remaining are whether the occurrence of bankruptcy has altered the rights and obligations of the parties, and whether this reorganization Court has jurisdiction to grant the relief requested. These issues will be discussed in reverse order.

The indenture trustees argue, quite plausibly, that the reorganization Court acquired jurisdiction only over "property of the Debtor"; that the premises conveyed to UDC in 1969 were no longer property in the possession or control of the Debtor on the date of bankruptcy; that the reorganization Court therefore has no jurisdiction over the UDC property or disputes relating to it; and that the reorganization Court clearly has no jurisdiction over UDC's claim against the indenture trustees. I find it unnecessary to decide whether this Court has jurisdiction over UDC's claim against the indenture trustees, since I have concluded, for the reasons set forth below, that this Court does have jurisdiction to grant relief, on other theories.

As set forth in Order No. 422, the Trustees' response to UDC's motion is deemed to be in the nature of a petition by the Trustees of the Debtor seeking specific performance of the indenture trustees' obligation to grant the requested releases. The indenture trustees contend that, since the relief requested affects property which had been transferred prior to bankruptcy, the summary jurisdiction of this Court does not extend to the present controversy.

The leading case in this Circuit on this general subject is In the Matter of South Jersey Land Corporation, 361 F. 2d 610 (3d Cir. 1966). In that case, it was held that a reorganization court was without jurisdiction to enjoin a state foreclosure proceeding against a separate corporation, not in reorganization, even though the reorganization debtor

owned a significant stock interest in that corporation. The essence of the holding was:

> "Since the power to stay proceedings against the debtor or its property, 11 U.S.C. §§ 513, 516(4), 548, is necessarily limited by the jurisdiction of the reorganization court, it follows that a stay may not be issued where the mortgage foreclosure proceeding is brought against property which is not the debtor's." 361 F.2d at 613.

Other authorities cited by the indenture trustees are to the same effect.

The present situation, however, is quite different. We are dealing here not merely with ownership rights in one parcel that was transferred before bankruptcy, but with all of the property of the Debtor which is subject to the Hudson River Mortgages. That property, in addition to the UDC parcel, constitutes the security for the various bond issues. By virtue of the doctrine of marshalling, as well as by reason of the indemnification agreement with UDC, the indenture trustees' dealings with the UDC property will have direct and inevitable impact upon the Debtor's estate.

In addition, there is an ongoing relationship between the Debtor's estate and the indenture trustees. It is in this Court that the indenture trustees seek protection of their liens (§ 77(b) (1) (5)); this Court is authorized to sell property subject to the Hudson River Mortgages free and clear of liens (§ 77 (l)); and it is this Court which must adjudicate the validity of the indenture trustees' proofs of claim (§ 77(c) (7)). This relationship between a railroad debtor and its secured creditors during the reorganization process is the essential concern of a § 77 reorganization court.

Moreover, the indenture trustees of the Hudson River Mortgages have filed proofs of claim in these proceedings. It is not seriously suggested, nor could it be in view of the decision of the Supreme Court in Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), that this Court lacks summary jurisdiction to dispose of all aspects of the subject matter of these proofs of claim. Ultimately, this involves a determination of the precise amount of the mortgage debt, and the identity of the property remaining subject to the liens of the mortgages, and the values properly attributable thereto. The claims presently asserted by the Trustees of the Debtor could properly be asserted as objections to, or counterclaims against, the proofs of claim submitted by the indenture trustees. Thus, In the Matter of Carnell Construction Corp., 424 F.2d 296 (3d Cir. 1970), and In re Solar Manufacturing Corporation, 200 F.2d 327 (3d Cir. 1952) are controlling. See Rochelle and King, Summary Jurisdiction in Bankruptcy; Katchen v. Landy and Questions Left Unanswered, 1966 Duke L.Rev. 669.

Indeed, even in the absence of the proofs of claim feature, it can be argued that the Debtor's right of specific performance is itself "intangible property" analogous to the claims which were held sufficient to confer summary jurisdiction in the bank set-off cases, In the Matter of Penn Central Transportation Company, Debtor, 453 F.2d 520 (3d Cir. 1971); see also In the Matter of Lehigh Valley Railway Company, 458 F.2d 1041 (3d Cir., Apr. 6, 1972); in the shippers set-off case, In the Matter of Penn Central Transportation Company, Debtor (Re: Application of the Trustees for an Order Directing Certain Shippers and Others to Pay Amount Owing to the Debtor), 339 F.Supp. 603 (E.D.Pa. 1972); and the interline carriers set-off case, In the Matter of Penn Central Transportation Company, Debtor (Re: Trustees' Petition to Compel Payment of Interline Balances), 340 F.Supp. 857 (E.D.Pa.1972).

The filing of the reorganization petition substantially altered the procedural rights of the parties, but, in my opinion, did not alter their substantive rights in any material respect. It is still the obligation of the Court to give effect to the terms of the mortgage indentures, to the

fullest extent possible consistent with the purposes of the reorganization statute. *See, generally,* Central R. Co. of New Jersey v. Manufacturers Hanover Trust Co., 421 F.2d 604 (3d Cir. 1970). The fact that the mortgagees are precluded from asserting defaults, because of the bankruptcy proceeding, does not deprive the Debtor of the right to credit additions and betterments against the proceeds from sales of real estate, or confer upon the indenture trustees the right to retain such proceeds in cash, so long as the value of the security is not diminished.

We are here concerned with post-bankruptcy recognition of pre-bankruptcy additions and betterments—in effect, an accounting of the true status of affairs which should have been reflected on the records of the Debtor and the indenture trustees on the date of bankruptcy. Subsequent "defaults" do not annul this right to an accurate statement.

And even if the issue were whether liened funds representing proceeds from sales of mortgaged property should now be drawn down to pay for these additions and betterments, the result would be the same. The improvements to the Selkirk yard were necessary, they affect a key part of the railroad's plant, and there is a reasonable prospect of successful reorganization. *Cf.* Central R. Co. of New Jersey v. Manufacturers Hanover Trust Co., *supra.*

■ For the reasons thus far discussed, it appears that, in the final analysis, the Trustees of the Debtor would have the right in these proceedings to insist that the additions and betterments made to property covered by the Hudson River Mortgages between the date of the sale to UDC and the date of bankruptcy must be treated as substitute security, in place of the property sold to UDC; that is, that the UDC property must be released from the mortgages in consideration of the additions and betterments. It further appears that UDC would have

a claim against the Debtor's estate under its indemnification agreement, the amount and priority of which would ultimately be determined in these proceedings. The remaining question is whether adjudication and implementation of these rights must await the processing of the proofs of claim program, and the approval and consummation of a plan of reorganization. I have concluded that the answer to this question is in the negative, and that it would be in the best interests of the Debtor's estate and of all of the parties to this controversy to grant appropriate relief at this point.

Postponement of final decision would not benefit the indenture trustees or the bondholders they represent. All that would be accomplished would be to cause hardship and damage to UDC, with resulting needless enlargement of its eventual claims against the Debtor's estate. The only equitable approach is to resolve the issues now.

■ The final issue is whether the amount of substitute security is to be measured by the sale price of the UDC parcel, or by the present value of the UDC parcel, as improved. The indenture trustees have presented no evidence and have cited no authorities to support their contention that the enhanced value should be considered. It seems clear that the result sought by the indenture trustees would be inconsistent with the mortgage language exonerating the purchaser from responsibility for the proper application of the purchase money (*see,* for example, First Mortgage, Article 6, Section 3), and with the after-acquired property clauses in the mortgages, which seemingly apply only to improvements made by the mortgagor (*see,* for example, First Mortgage, Article 6, Section 1).

The indenture trustees will therefore be required to issue the requested releases, on the basis of the additions and betterments certified (see Order No. 476).