In re INTERNATIONAL POWER SECURI-
TIES CORPORATION.

Nos. 9572, 9584.

United States Court of Appeals
Third Circuit.

Argued Feb. 19, 1948.

Decided Sept. 28, 1948.

George Zolotar, of New York City, (Roger S. Foster, Sol., and Sidney H. Willner, Associate Sol., both of Washington, D. C., and Kiva Berke, of New York City, on the brief), for Securities and Exchange Commission.

Louis G. Bernstein, of New York City (Scribner & Miller, of New York City, and John W. Griggs and Morrison, Lloyd & Griggs, all of Hackensack, N. J., on the brief), for appellants Bondholders' Protective Committee.

Milton, McNulty & Augelli, of Jersey City, N. J., on the brief, for appellant John J. Murphy.

MacIlburne Voorhies, of New York City (Shearman & Sterling & Wright and John A. Wilson, all of New York City, on the brief), for respondent, National City Bank of New York.

Samuel F. Frank, of Union City, N. J. (Hollander & Leichter, of Union City, N. J., on the brief), for respondent, Bank of Rome for Switzerland.

Before McLAUGHLIN, O'CONNELL, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

International Power Securities Corporation filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in the United States District Court for the District of New Jersey on February 24, 1941.

Its principal assets, other than approximately $1,250,000 of cash and marketable domestic securities, consist of three separate mortgages on properties in Italy executed by certain companies merged into Societa Edison of Milan ("Edison"). These mortgages are deposited with the Bankers Trust Company, Indenture Trustee, as collateral for three series of the debtor's bonds, known as "C", "E" and "F." The bonds of these series were issued in the same principal amounts, respectively, as the Edison mortgages.[1] Edison has been in default in the payment of principal and interest on the underlying mortgages since 1940. As a result, the debtor in turn defaulted on its bonds and filed its petition for reorganization.

The order from which the present appeals were taken was made in connection with proceedings instituted by the Court Trustee and the Series "E" Bondholders' Committee relating to the status in the reorganization of two large blocks of debtor's bonds, together constituting nearly one-third of its outstanding bonds. One of these blocks in the principal amount of $3,929,000 is con

---

[1] The unpaid principal of the debtor's bonds, and likewise of the underlying Edison mortgages, is $18,846,000. Of the debtor's bonds, $2,523,000 are held in its treasury, leaving $16,323,000 outstanding.

cededly owned by Edison, and the bonds are physically held outside the United States. The other block in the amount of $1,250,-000 is held at the National City Bank of New York in a custodial account ostensibly for Banco di Roma of Lugano, Switzerland.

A vigorous controversy exists as to the real ownership of the bonds held by the National City Bank. The Court Trustee contends that they are actually owned by Edison and that consequently he can set-off the debtor's obligations thereon against the indebtedness of Edison on the mortgages as subsequently discussed.

On June 23, 1947, the District Court issued an order upon petition of the Court Trustee, directing the National City Bank, Edison, Banco di Roma, and others to show cause why they should not be restrained from selling, transferring, or otherwise disposing of the stocks, bonds or other securities of the debtor until the return date of the order. The show cause order contained a provision restraining the parties from said acts until the return day, July 11, 1947. Upon the return day, Edison, National City Bank and the Banco di Roma appeared specially and objected to the jurisdiction of the Court to enter the stay. The hearing was adjourned to September, following submission by the Court Trustee of exhibits and statements in support of his claim that the bonds in controversy had been acquired and were being held for the benefit of Edison.

On August 4, 1947, the Court issued an order directing the Trustee to pay $50 per $1,000 principal amount of the bonds, excepting that "Pending the further order of this Court, no payment shall be made on any bonds now held by the National City Bank of New York in a custodial account for the Banco di Roma", etc. Payment to Edison on bonds, directly or indirectly owned by it, was also barred.

The Bondholders' Protective Committee for Series "E" bonds of the Debtor moved by petition and order to show cause, dated October 14, 1947, for an order consolidating all prior proceedings with respect to the $3,929,000 of the debtor's bonds concededly held by Edison, and the $1,250,000 of debtor's bonds held at the National City Bank, together with the undetermined portions of the order of the Court, dated August 4, 1947, withholding cash distributions upon these bonds, and for the following further relief in connection therewith: that National City Bank, Banco di Roma and Edison be directed to file proofs of claim with respect to these bonds, pursuant to Section 196 of the Bankruptcy Act, 11 U.S.C.A., § 596; that any party in interest should be allowed to file objections, defenses, off-sets, or counterclaims thereto; that the Court determine such claims and objections after the taking of such testimony as might be requisite in connection therewith; that any claims founded upon the said $1,250,000 of bonds held at the National City Bank, and on the $3,929,000 of bonds held by Edison, should be disallowed, limited to cost or subordinated; and that the temporary injunction contained in the order of June 23, 1947, be continued in full force and effect until the determination of such proceeding as so consolidated.

At a further hearing before the District Court on December 15, 1947, counsel for Banco di Roma submitted certain sworn statements purporting to show that Edison had no direct or indirect interest in the $1,250,000 bonds.

On December 22, 1947, the District Court entered an order (1) vacating the preliminary injunction in its entirety with respect to the National City Bank and Banco di Roma; (2) modifying the preliminary injunction with respect to Edison so as to permit it to buy, but not to sell, the debtor's bonds; and (3) reserving decision with respect to all other relief requested in the orders to show cause and petitions before it.

The present appeals were taken from that part of the aforementioned order vacating the preliminary injunction against National City Bank and Banco di Roma with respect to the bonds in the custodial account. On December 22, 1947, on application of the appellants, we reinstated the District Court's stay against transfer of the bonds in the custodial account, pending hearing and determination of the appeals.

Since the taking of these appeals, the District Court on February 16, 1948, granted most of the relief sought in the proceedings.

A copy of the order granting such relief has been submitted to this Court. It provides that all persons claiming any interest in the $1,250,000 of debtor's bonds held at the National City Bank shall file proofs of claim with the Court Trustee by May 1, 1948; that any party may file objections, defenses, off-sets, counterclaims or other pleadings or petitions with respect to such proofs of claim within a time to be fixed by the Court; and that the Court reserves decision with respect to the remaining relief requested in the proceedings.

Two distinct questions are presented by these appeals: (1) did the District Court have jurisdiction to grant the injunctive relief sought by the appellants, and (2) if jurisdiction existed, did the District Court commit reversible error in denying the injunctive relief:

As to jurisdiction:

Preliminarily, it must be noted that the District Court did not rule specifically on the jurisdictional question but denied the application for injunctive relief on its merits. This, despite the fact that in their respective special appearances National City Bank and Banco di Roma had objected that the Court was without jurisdiction because the bonds in the custodial account were held in New York City (outside the territorial jurisdiction of the Court); the two banks were likewise situated outside the territorial limits of the Court; neither did any business or had an office in New Jersey and no process had been served upon either personally within the District. The two banks had further urged, in support of their objections, that the summary extra-territorial jurisdiction of the bankruptcy court under Chapter X functioned only to protect the property of the debtor and that in the instant case the bonds in the custodial account constituted obligations and not assets of the debtor. The same contentions are advanced in the present appeals.

Certain well-established principles are applicable in the determination of the issue as to jurisdiction.

They are: Courts of bankruptcy are invested with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings. Local Loan Co. v. Hunt, 1934, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. They are empowered to issue an injunction in a summary proceeding when necessary to prevent the defeat or impairment of their exclusive jurisdiction or to protect the property and assets of a bankrupt wherever situated.[2] The power of a bankruptcy court to protect by injunction the subject matter of its jurisdiction is inherent in the court as a virtual court of equity and exists as well by virtue of Sec. 2, sub. a(15) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(15), and the "all writs" provision of Sec. 262 of the Judicial Code, 28 U.S.C.A. § 377.[3] The process necessary to render such injunction effective may extend beyond the territorial limits of the issuing court. Bankruptcy proceedings are inherently proceedings in equity. Reorganization proceedings under the Bankruptcy Act are "special" proceedings which seek only to bring about a reorganization. The tendency of judicial interpretation of the Act has been in the direction of progressive liberalization in respect of the operation of the bankruptcy power so as to meet the challenge of present day economic and business conditions. Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 1935, 294 U. S. 648, 675, 676, 55 S.Ct. 595, 79 L.Ed. 1110. Among the powers granted under the Act are *the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto.* The bankruptcy court may invoke its equitable powers to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done. By reason of the express provisions of Sec. 2 and Sec. 57, sub. k, these powers are to be exercised in the allowance, disallowance or subordination of claims according to the equities of the case. Pepper

---

[2] Section 111 of the Bankruptcy Act provides:

"Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."

[3] Revised Judicial Code, Title 28 U.S.C. A. § 1651.

v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281.

The above principles, as established by the Supreme Court of the United States, have been applied by the Seventh Circuit in Re Burton Coal Co., 1942, 126 F.2d 447; the Sixth Circuit in Re Cuyahoga Finance Co., 1943, 136 F.2d 18; and this Court in Re Standard Gas & Electric Co., 1943, 139 F.2d 149.

These three cases are of considerable significance in the determination of the jurisdictional issue presented by these appeals. In the Burton Coal Co. case the claim of a creditor was secured by common stock of the debtor corporation. Upon a claim by other persons that they were the owners of the same stock the creditor brought an application in the reorganization proceeding for an order establishing its superior right to the stock. Upon a ruling in its favor an appeal was taken challenging the jurisdiction of the District Court. As stated by the Circuit Court of Appeals, the sole question raised was 126 F. 2d at page 448:

"Does a court of bankruptcy, in administering the bankruptcy law, have jurisdiction and power to determine a dispute between parties, concerning ownership of and title to property in which neither the debtor corporation nor its trustee has any interest?"

In answering the question in the affirmative, the Court said 126 F.2d at pages 448, 449:

"It was impossible to administer the estate, or to reorganize the debtor, without determining the controversy between appellants and appellee respecting this stock. Upon that determination depended the amount of appellee's claim against the debtor. Because of such fact, the jurisdiction of a court of bankruptcy is extended beyond what it ordinarily would be. It extends to disputes such as existed between appellants and appellee, without the settlement of which reorganization cannot proceed. United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055; In re Railroad Supply Co., 7 Cir., 78 F.2d 530."

The Cuyahoga Finance Co. case is of especial pertinence in view of the contention made by the appellants here that if the bonds in the custodial account are owned by Edison they are subject to equitable claims and set-offs assertable on behalf of the bankrupt estate against such bonds in view of Edison's indebtedness on its mortgage obligations to the debtor.[4]

In the Cuyahoga Finance Co. case, in a Chapter X proceeding, the Court held that the bankruptcy court had jurisdiction to determine, in a summary proceeding, set-offs against the debtor's obligation to a pledgee creditor, which, having possession of the pledged assets, declined to file a claim or otherwise consent to the jurisdiction of the Court.

Said the Court in the Cuyahoga Finance Co. case, 136 F.2d at page 21:

"The Act places under the jurisdiction of the court all the tangible and intangible assets of the corporation whether or not in its possession so that in a single action, it may adjust conflicting claims. A distinct purpose of the amendment to the Bankruptcy Act was to subject the administration of the corporation, during the period of reorganization or rehabilitation, to the control of tribunals clothed with authority and charged with the duty to proceed to consummation of a plan or reorganization in a summary way.

"In order that the corporation may be quickly rehabilitated, time being in many instances the essence of the proceedings,

---

[4] The appellants contend that as between the Court Trustee and Edison, the debtor is entitled to have any claim of Edison upon the bonds of the debtor which Edison directly or indirectly owns either (1) disallowed; (2) or limited to cost; (3) or subordinated to the remaining bonds of the debtor held by the general public; (4) or off-set by the Court Trustee against the obligation of Edison to the debtor on the mortgages of Edison to the debtor. The equitable claims and off-sets are asserted on the premise that Edison's default of its mortgage obligations is responsible for the debtor's reorganization and the depressing of the value of the debtor's bonds, and further that Edison is in a position similar to that of a surety in respect of the underlying mortgages pledged as security for debtor's bonds.

*the court has broad powers to bring into the action all of those who may have claims on the corporate assets. * * ***

"It is a basic principle of equity courts to dispose of litigation finally, making as complete decision on all the points embraced in a cause as its nature will admit in order to preclude future litigation and to avoid a multiplicity of suits. Acting pursuant to this principle in reorganization proceedings, *courts of bankruptcy make effective use of the doctrine of set-offs and counterclaims.* 11 U.S.C.A. § 108, 52 Stat. 878." (Emphasis supplied)

In the Standard Gas & Electric Co. case the special trustee of the debtor had brought suit in the Supreme Court of the State of New York against former directors of the debtor and others, alleging wrong-doing on their part in connection with the debtor's property. The stockholders sought to intervene in the New York state court action. The bankruptcy court issued an injunction restraining such action. The stockholders challenged the bankruptcy court's power to issue the injunction and its jurisdiction to issue process directed to a non-resident of the District in respect of the injunction. We sustained the action of the bankruptcy court, stating, 139 F.2d at page 152:

"The choses in action now being prosecuted by the special trustee in the plenary action in the New York state court constitute property and assets of the debtor in bankruptcy over which the District Court had acquired exclusive jurisdiction."

We further held, 139 F.2d at page 153:

"The injunction issued for the protection of the res being an exercise of the bankruptcy court's summary jurisdiction, it follows that the process necessary to render the injunction effective could proceed beyond the territorial limits of the court for service upon those to be enjoined thereby."

■ Applying the principles and cases cited above, we are of the opinion that the bankruptcy court had jurisdiction to grant the injunctive relief sought. That the same opinion was held by the bankruptcy court is evident from the fact that it originally issued the injunction and then only vacated it for what it considered meritorious reasons.

Parenthetically, it may be noted that while the National City Bank raises the question of jurisdiction, in its brief it appears to concede jurisdiction if Edison owned the bonds in its custody.[5]

The ownership of the bonds in custody is, of course, the very crux of the entire case. It is patent that unless Edison owned the bonds, directly or indirectly, no right or counter claim or set-off would inure to the benefit of the debtor and hence injunctive relief could not be granted.

It must be emphasized, however, that it is unquestioned by all the parties that the bonds in custody are subject to equitable set-offs if they are owned by Edison, directly or indirectly.

■ The right of equitable set-off is a chose in action and as we held in Re Standard Gas & Electric Co., supra, a chose in action constitutes property of the debtor over which the bankruptcy court has exclusive jurisdiction. The question then arises as to whether the bankruptcy court in the exercise of its summary jurisdiction was empowered to issue the injunction sought.

It is at once necessary to stress the purpose and scope of the injunction here involved. It was a restraining order designed to maintain the status quo of the bonds in the custodial account, that is, to prevent their possible sale to an innocent purchaser for value, who might take title free and clear of at least certain of the equitable set-offs assertable only against

---

5 Page 19 of the brief of National City Bank states:

"Moreover, the argument in effect asserts that the District Court should have issued an illegal injunction against National City Bank, entirely beyond the Court's jurisdiction. The only possible basis upon which the District Court could have jurisdiction to enjoin National City Bank and the Swiss Bank from transferring the bonds, is that the bonds in fact belong to Milan Edison and therefore were subject to the alleged 'equities' claimed by the appellants, and that consequently, the District Court had jurisdiction to issue an injunction against the non-resident National City Bank to protect these alleged 'equities' as an asset of the bankrupt estate."

Edison, the alleged owner of the bonds. The injunction merely sought to "protect" the debtor's chose in action (its property), and was not in any sense designed to "enforce" the chose in action.

In short the injunction sought was by way of a *holding* and not an *enforcing* action.

It is essential to keep in mind the sharp distinction between the *preservation* of choses in action and their *enforcement*. For example, in Re Standard Gas & Electric Co., 3 Cir., 1941, 119 F.2d 658, we held that the summary jurisdiction of the bankruptcy court in the *enforcement* of a claim by a debtor against non-residents did not extend beyond the territorial limits of the Court and that a plenary action must be resorted to in the state where the creditor resides. But in the same reorganization proceeding after the trustee brought his plenary suit in the proper court, we held in Re Standard Gas & Electric Co., 3 Cir., 1943, 139 F.2d 149, that an injunction could so issue to *preserve and protect* choses in action from interference.

In the case at bar, the injunction sought against the disposition of the bonds could not conceivably be considered as seeking either determination of the asserted right of set-off or its enforcement. It merely and solely sought to protect the right of set-off while the issues as to it and also of ownership of the bonds were determined by the proper tribunal, the bankruptcy court, which under Section 196 of the Act is given the power and the duty to require the filing of proofs of claims and to determine summarily the allowability and extent of the claims.[6]

Our opinion that there was jurisdiction to issue the injunction does not rest alone upon the narrow ground of the scope of the injunction as a preserving and not an enforcing proceeding. It rests too, upon the broad ground of the facts of the case and the application of the principles of law earlier stated. Here, the $1,250,000 bonds in the custody of the National City Bank represented a most substantial claim against the debtor and against its principal assets pledged as security.

The question of ownership of these bonds was most vital to the reorganization. On the answer to that question critically depended the existence or non-existence of the asserted equities of set-off. If it was ultimately established that Edison owned the bonds the very nature and extent of its claims against the debtor and its assets would be materially affected with a corresponding effect in the formulation of a plan of reorganization.[7]

It is obvious, too, that a fair and equitable plan of reorganization could not be formulated prior to the resolution of the questions of ownership of the bonds and the asserted equitable rights.

As part of the reorganization process the bankruptcy court would, of course, ultimately be required to allow, disallow, or subordinate any claim with respect to the bonds in custody, under Sections 2, 57, sub. k and 196 of the Act. Further, under Section 221 of the Act, the bankruptcy court, prior to confirming the plan of reorganization, would be required to find it fair and equitable to all persons affected thereby. Here it is clear that, as stated in the Burton Coal Co. case, "It was impossible to administer the estate, or to reorganize the debtor, without determining the controversy between appellants and appellee".

The situation in the instant case certainly comes within the purview of the Supreme Court's ruling in the Continental Illinois National Bank case, supra, that the tendency of judicial interpretation of the Act has been in the direction of progressive liberalization in respect of the operation of the bankruptcy power so as to meet the challenge of present day economic and business

---

[6] See also Sec. 225 for a similar grant of summary jurisdiction even when no proof of claim is filed. That a claim had not been filed with the bankruptcy court with respect to the bonds in the custodial account at the time the injunction was sought is unimportant. In re Cuyahoga Finance Co., 6 Cir., 1943, 136 F.2d 18,

it was held that the bankruptcy court had summary jurisdiction to determine the allowability and extent of a claim where the creditor *declined* to file a claim or to otherwise consent to the jurisdiction of the Court.

[7] See Note 4.

conditions and the further statement in Pepper v. Litton, supra, 308 U.S. at page 305, 60 S.Ct. at page 244, 84 L.Ed. 281, that the bankruptcy court may invoke its equitable powers "to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."

That brings us to the second and remaining question: did the bankruptcy court commit reversible error in denying the injunctive relief by vacating its original restraining order relating to the bonds in the custodial account:

The record establishes that one Valerio, General Manager of Edison and its affiliated companies in Italy, in October or November, 1946, retained Cicogna to make purchases for his account of the debtor's bonds at a price not to exceed $365 per a $1,000 bond.[8] Valerio instructed Cicogna to keep the transaction "quiet." Bonds were purchased by Cicogna with funds furnished by Valerio and the bonds so purchased were placed in a safe deposit box in the National City Bank. The box was rented by Cicogna in Valerio's name. Two separate bank accounts were opened by Cicogna in the same bank, entitled "Gian Luca Cicogna, Purchasing Securities" and "Gian Luca Cicogna Purchasing Oil," the bank being advised that the funds in the accounts belonged to Valerio. Funds were withdrawn from these accounts from time to time in payment of bond purchases.

After 191 bonds were purchased in various lots and paid for with Valerio's funds, a block of 1048 bonds was offered to Cicogna by the liquidator of the Aldred Investment Trust. Cicogna was specifically authorized by Valerio in a cablegram dated March 17, 1947, to make the purchase of these bonds. Valerio furnished all but $302,040 of the amount required to make the purchase. That sum was borrowed on March 26, 1947, by Cicogna, from the National City Bank as a temporary loan and the Aldred bonds, together with those previously purchased, were pledged as security.[9] At the time Cicogna arranged for the loan he advised the National City Bank that he was acting in the transaction for Edison. On his written application for the loan Cicogna stated that the bonds were purchased for the account of Edison.[10]

Subsequently a few additional bonds were purchased, bringing the total to $1,250,000.[11] These additional bonds were added to the collateral for the National City Bank loan. By May 23, 1947, the loan was reduced with funds supplied by Valerio, to approximately $219,000. The bank pressed for payment of the loan and Cicogna so advised Valerio. On May 29, 1947, Valerio cabled Cicogna as follows:

"Bancroma Lugano is remitting today by cable $220,000 to National City Bank taking known securities on collateral loan."[12]

On June 2, 1947, the National City Bank, acting on instructions of the Banco di Roma, debited the account which the latter had with it in the amount of the then unpaid balance of the $220,000, and applied that sum in payment of the Cicogna loan. The $1,250,000 bonds were then placed in a custodial account by National City Bank for the Banco di Roma pursuant to instructions from the latter. Cicogna cabled Valerio advising him of the fact.

On June 5, 1947, the Securities and Exchange Commission launched an inquiry into the true ownership of the bonds in the custodial account. It specifically asked Cicogna the name of the owner of the bonds. Cicogna, on June 6, 1947, cabled Valerio advising him of the situation and stated:

8 The authorization was formalized in a letter date November 10, 1946, in which Valerio directed Cicogna to purchase bonds for the account of persons abroad whose identity he would later disclose. Exh. T-1.

9 Cicogna also pledged as collateral for the loan, securities belonging to him and his wife.

10 Cicogna stated on the application for the loan (Exs. T-11):

"This a/c for operation of purchase of 1048 Int. Securities Corp. Bonds for Italian Ed Co"

11 The total consideration paid for these bonds was approximately $400,000.

12 Exh. T-5b, Document 65.

"Urgent for me to have authorization give your name and residence care of Banco di Roma, or if agreeable to latter to give their name." [13]

In reply, Valerio sent Cicogna the following cable, dated June 10, 1947:

"Buyer is Banco Roma for Switzerland Swiss Company with headquarters in Lugano." [14]

It was at this juncture, on June 17, 1947, that the Trustee of the debtor instituted the proceeding now under review. There was then submitted to the Court evidence which developed the facts above set forth, Cicogna having been subjected to intensive direct and cross-examination.

In support of the contention that Edison did not own the bonds in the custodial account, counsel for Banco di Roma submitted a statement of the Chairman of Edison, stating it was not interested "either directly or indirectly." [15] It also submitted an affidavit of one Bucher, a resident of Lugano, Switzerland, in which he stated:

"For purchase of the aforesaid bonds, I had recourse to the confidential work of Mr. Giorgio Valerio of Milan, a friend of mine, who—better than any other person—was so situated as to be able to guide me in this transaction.

"That the aforesaid twelve hundred fifty (1250) bonds do not belong to the Societa Edison of Milano. * * *

"I take occasion to inform you that I am now in negotiation with a Swiss group to sell the securities in question, which operation will make it possible for me to pay off my indebtedness to you." [16]

Bucher did not make a definite statement that he was the owner of the bonds although his affidavit was so drawn as to convey that impression. Following submission of the above by counsel for Banco di Roma, the bankruptcy court vacated its injunction with respect to the custodial bonds and this appeal followed.

We gather from the colloquies between the Court below and counsel that it vacated the injunction because (1) it was not convinced that Edison was the owner of the bonds, and (2) it believed if Edison were the owner the bankrupt estate would be adequately protected in view of the injunction which it had issued restraining it from disposing of any and all bonds which it owned.

That considerable doubt existed in the mind of the Court below on the question of ownership is disclosed by its various statements. For example, at the December 15, 1947, hearing it stated at one point:

"Now, I don't know who the purchaser is. I think there is sufficient here to overcome the suggestion that the bonds are, in fact, Milan Edison's, but if they are we should continue the restraint against Milan Edison so they shall not transfer." [17] (Emphasis supplied)

Almost immediately thereafter, referring to Bucher, it said:

"It appears now he is the owner, not Milan Edison." [18] (Emphasis supplied)

And at the December 22, 1947, hearing:

"Now it appears that they may not be Milan Edison's. I will resolve the doubt in your favor because the Trustee hasn't proved that they are." [19] (Emphasis supplied)

As to the statement of the Court below at the December 15th hearing, that "It appears now that he (Bucher) is the owner * * *," it has already been noted that Bucher himself did not make a definite statement that he was the owner. It is also significant that Banco di Roma, neither in its brief nor its oral argument, asserted ownership by Bucher. Indeed, the bank did not even go so far as to say that it dealt with Bucher as the owner of the bonds. On the score of its loan it merely said:

"All it (Banco di Roma) can possibly say is that it arranged with someone, be it Bucher or Valerio, to make a loan of $220,000 and to take over the 1250 bonds in question." [20]

---

[13] Exh. T-5a.
[14] Exh. T-4.
[15] Included with affidavit of Samuel F. Frank, filed Dec. 15. 1947.
[16] Ibid.

[17] N. T. page 53.
[18] Ibid.
[19] N. T. page 11.
[20] Page 11, Brief of Banco di Roma.

It is apparent from the statements of the Court below that the moving cause of its vacation of its injunction was its assumption that if Edison was the owner of the bonds in the custodial account, the interests of the bankrupt estate were amply safeguarded by virtue of the general injunction issued against Edison.

It cannot be assumed that the continuance of the injunction against Edison was adequate to meet the requirements of the situation. It is inconceivable that Edison, if it was the owner of the bonds, would in the future sacrifice the advantages of its hidden ball play in acquiring them and openly signal its ownership, thereby inviting attack by the appellants.

It was the clear duty of the Court below, pending ultimate ascertainment of the ownership of the bonds in the due course of the reorganization proceedings, to determine only the twin questions whether there existed a substantial probability that Edison was the direct or indirect owner of the bonds and whether a restraining order was essential to protect the debtor's estate against transfer of the bonds with a consequent loss of its assertable equitable rights.

█ We are compelled to·the conclusion that the Court below erred in permitting a premature factual finding as to ownership and a belief that adequate relief was provided by the ·continued injunction ·against Edison to dictate its ruling.

That such error is reversible is manifest by the fact that there were· involved (1) ownership of $1,250,000 of bonds and (2) a set-off problem which materially affected ·the question of· a possible reorganization of the debtor and the terms of such reorganization. ·

The salient evidence adduced by the appellants that (1) Edison had, .independent of the transaction under review, demonstrated its interest in the debtor's bonds by admitted purchases of $3,929,000, (2) Valerio, its General Manager, had directed and supplied the funds for the purchase of the $1,250,000 bonds in the custodial account and (3) Cicogna's representation to the National City Bank that the bonds were being purchased for the account of Edison, certainly constituted a prima facie showing of a connection between Edison and the bonds in controversy. The proofs submitted by Banco di Roma far from met or overcame this prima facie showing.

Finally, it is of striking significance that, as previously stated, following the vacation of its injunction relating to the custodial bonds, the Court below directed the filing of proofs of claim by the parties interested in such bonds. As pointed out by the appellants, it was clearly anomalous for the Court below thus to determine that the bonds in the custodial account are a special block regarding which summary hearings must be held, after proofs of claim and objections thereto have been filed, while vacating the injunction which protected its jurisdiction in the matter.

For the reasons stated, the order of the Court below will be reversed with direction to proceed in accordance herewith.