In the Matter of IMPERIAL "400" NATIONAL, INC., a Delaware corp., Bristol Financial Corporation, a New Jersey corp., Imperial "400" Corporation, a Nevada corp., Imperial "400" Land Corporation, a Delaware corp., Motor Hotel Properties, Inc., a New Jersey corp., Trans-National Development Corporation, a New Jersey corp., Four Hundred Construction Corporation, a Delaware corp., National Motel Construction Company, a California corp., and Trans-World Motel Supply Corporation, a California corp., Management Directions, Inc., Debtors.

Appeal of Douglas I. KUBALL.

Appeal of Mary Ellen KUBALL.

Nos. 18217, 18218.

United States Court of Appeals, Third Circuit.

Argued June 5, 1970.

Decided July 23, 1970.

See also 3 Cir., 432 F.2d 232.

F. A. Jones, Hartwig, Crow & Jones, Benton Harbor, Mich., for appellants.

Joseph M. Nolan, Nolan & Lynes, Newark, N. J. (Ernest R. Nuzzo, Newark, N. J., on the brief), for trustee.

Sheldon Schachter, Kleinberg, Moroney, Masterson & Schachter, Newark, N. J. (Henry S. Gordon, Newark, N. J., on the brief), for Unsecured Creditors Committee.

Paul Gonson, Asst. Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Solicitor, James J. Sexton, III, Atty., Securities and Exchange Commission, Washington, D. C., Edwin H. Nordlinger, Special Counsel, Securities and Exchange Commission, New York City, on the brief), for Securities and Exchange Commission.

Before FREEDMAN,[*] VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This case involves a "clash of jurisdiction" between two federal district courts [1]—the District Court for the District of New Jersey, which has jurisdiction of Imperial "400" National, Inc., presently undergoing a Chapter X reorganization, and the District Court for the Western District of Michigan where Appellants here, Douglas I. Kuball and Mary Ellen Kuball, filed a bankruptcy petition on behalf of a partnership in which Imperial has a 75% interest and the Kuballs have a 25% interest.

The present appeal is from an order entered by Judge Shaw in the New Jersey District Court enjoining the Michigan bankruptcy proceeding and transferring that proceeding to New Jersey. Judge Shaw issued the injunction and transfer order in connection with the reorganization of Imperial, which was before his Court. He based jurisdiction for the transfer on the authority of sections 32 (a) (11 U.S.C.A. § 55(a)) and 111 of the Bankruptcy Act (11 U.S.C.A. § 511). Before considering the precise issue raised in this appeal, it is necessary to examine the nature of Imperial's business organization and the history of the reorganization proceeding in the New Jersey District Court.

---

[*] Judge FREEDMAN did not participate in the decision in this case.

[1]. Duggan v. Sansberry, 327 U.S. 499, 500, 66 S.Ct. 657, 90 L.Ed. 809 (1946).

Imperial is a corporation whose principal business is the construction, furnishing and operation of a chain of motels throughout the United States. The chain consists of approximately 116 standardized motels located in 35 states and operated under the name "Imperial '400' Motels." Ninety-seven of these motels are owned by partnerships formed under partnership agreements between Imperial and co-owner operators; eight are completely owned by Imperial; eleven are operated under franchise and license agreements. In each of the ninety-seven partnership-operated motels, Imperial has at least a 50% general partners' interest.

This appeal concerns the Benton Harbor Imperial "400" Motel in Benton Harbor, Michigan. The Benton Harbor Motel is owned by a partnership formed pursuant to an agreement to form a limited partnership, executed October 11, 1963, in New Jersey. The Appellants, Douglas and Mary Kuball, own a 25% interest in the Benton Harbor partnership, as general partners; Imperial owns a 50% interest as a general partner and a 25% interest as a limited partner.[2]

Imperial had previously, on September 21, 1962, obtained a sixty-five year lease on the land where the motel was later built, and pursuant to the partnership agreement assigned thirty-five years of such term by sub-lease to the partnership which Imperial had formed with the Kuballs.

The partnership agreement states that the "Co-owner operator," the Kuballs, and Imperial shall own their respective interests in the "Motel Business as tenants-in-common." The partnership agreement also provides that both the co-owner and Imperial may sell their respective interests in the "Motel Business."

On June 3, 1965, Imperial filed a petition for an arrangement under Chapter XI of the Bankruptcy Act in the New Jersey District Court. The petition was amended to comply with Chapter X when the New Jersey Court granted the Securities and Exchange Commission's motion to intervene and to dismiss the Chapter XI proceeding unless it was so amended. A Trustee who took over the operation of Imperial's business was appointed on February 21, 1966. The New Jersey District Court issued an order which restrained all actions against Imperial in law or in equity and the issuance of any process or conduct of any proceeding which would interfere with the Trustee's possession of Imperial's property.[3]

More than three years after the appointment of the Trustee by the New Jersey Court, the Kuballs filed a petition on behalf of the partnership for partnership bankruptcy proceedings in the District Court for the Western District of Michigan.[4] The petition was filed

---

2. When the agreement was executed, the 25% limited partner's interest belonged to Imperial's wholly owned subsidiary, Motor Hotel Properties, Inc. This interest was subsequently assigned to Imperial.

3. The background of this proceeding and additional information about Imperial appear in In the Matter of Imperial "400" National, Inc., 274 F.Supp. 342 (D.N.J. 1966).

4. § 5 of the Bankruptcy Act, 11 U.S.C. § 23 provides:
 "a. A partnership, including a limited partnership containing one or more general partners, during the continuation of the partnership business or after its dissolution and before the final set-

tlement thereof, may be adjudged a bankrupt either separately or jointly with one or more or all of its general partners.
"b. A petition may be filed by one or more or all of the general partners in the separate behalf of a partnership or jointly in behalf of a partnership and of the general partner or partners filing the same: Provided, however, that where a petition is filed in behalf of a partnership by less than all of the general partners, the petition shall allege that the partnership is insolvent. A petition may be filed separately against a partnership or jointly against a partnership and one or more of all of its general partners."

without the prior knowledge of the Trustee in the New Jersey reorganization and without permission of the New Jersey District Court. A subpoena to nonjoining partners, dated April 24, 1969, summoned Imperial to appear and plead in the partnership bankruptcy proceedings. Because he was in California on Imperial's business, the Trustee filed a petition requesting a new date for such appearance. Following instructions from the New Jersey Court, the Trustee went to the Referee in Bankruptcy in the Michigan District Court and informed him and the Kuballs' counsel of the reorganization proceedings in New Jersey, and the restraints issued by the New Jersey Court.

The Referee in Michigan nevertheless issued a notice scheduling a meeting of creditors on June 6, 1969. On May 28, 1969, the Trustee filed in the New Jersey reorganization court a petition to restrain the prosecution of the partnership bankruptcy proceedings in the Benton Harbor Motel matter. On the same day, Judge Shaw issued a temporary restraining order and an order to show cause why the Kuballs should not be permanently enjoined from continuing the prosecution of the partnership bankruptcy proceedings in Michigan.

On June 9, 1969, the Kuballs appeared by counsel in New Jersey. The Kuballs stated that they believed the Michigan proceedings would continue on June 16, 1969. Judge Shaw continued the hearing until June 23, 1969, to allow all parties additional preparation time. On June 11, 1969, Judge Shaw filed an order continuing the restraints and enjoining the bankruptcy in Michigan until a further determination was made in the New Jersey Court. On the same day, the Trustee was informed by the Referee in Michigan that the hearing scheduled for June 16,

1969, in Michigan was to be held unless the Kuballs agreed to an adjournment. The Trustee then filed with the reorganization court a supplemental petition to restrain the partnership bankruptcy proceedings instituted in Michigan, and to transfer it to New Jersey. On June 12, 1969, Judge Shaw issued a temporary restraining order and an order directing the Kuballs to show cause on June 23, 1969, why the partnership bankruptcy proceedings should not be transferred to and consolidated in the New Jersey proceedings. At the direction of the New Jersey Court, the Trustee appeared before the Referee in Michigan on June 16, 1969. An offer was made by the New Jersey Trustee to pay in full all claims accruing at Benton Harbor after June 3, 1965. This same offer was also made before Judge Shaw. The offer was refused by the Kuballs. The Michigan Referee then adjourned the hearing until July 9, 1969.

The Kuballs failed to appear at a hearing before Judge Shaw. Scheduled for June 23, 1969. On June 27, 1969, Judge Shaw filed an order transferring the proceedings instituted in the Michigan District Court to the New Jersey District Court. On July 9, 1969, the Kuballs applied for a stay of the order of transfer, stating that notice of the proceedings to transfer, or of the order itself had not been given to partnership creditors. Judge Shaw filed a notice to creditors on July 16, 1969, with copies to the partnership creditors listed in the Kuballs' partnership petition. After considering the responses to the notice, the New Jersey reorganization court issued a Memorandum and Order dated August 12, 1969, affirming its order of transfer dated June 27, 1969.

The Kuballs appealed to this Court from Judge Shaw's order of June 27, 1969.[5] They advance two basic conten-

5. The SEC and a group of Imperial's creditors titled the "Unsecured Creditors Committee" urged on this appeal that this Court affirm the order of the District Court.

tions: (1) the New Jersey reorganization court did not have jurisdiction to enjoin the Michigan bankruptcy proceeding because Imperial had no property interest in the assets of the Benton Harbor Motel partnership— these assets they contend are the property of the partnership, an entity separate and distinct from each partner; [6] and (2) the New Jersey Court had no jurisdiction to transfer the Michigan proceeding to New Jersey under the language of section 32a of the Bankruptcy Act.[7]

The problems in the case stem to a considerable extent from the form of Imperial's business organization. Imperial's principal business is operated through numerous partnerships in which Imperial has the controlling interests. The normal procedure of Imperial was to recruit a co-owner operator and enter into a partnership agreement for the operation of a motel, which Imperial would finance, construct (on a site selected by it and approved by the co-owner operator) and completely furnish in conformity with its chain standards and specifications. The motels are "uniform in architecture and design, color coordination and appearance." Operation of the motels is in keeping with the chain concept. Each co-owner operator attends a standard training course in all phases of motel operations given by representatives of Imperial. Imperial sets "standards, procedures, rates and operating budgets." One percent of gross revenues from each motel must be paid into a fund for "chain advertising and * * * room sales development and standardization to benefit all motels in the chain." There is

a nationwide referral system and national advertising. Co-owner operators are given a license to use certain trade names, designs and slogans identifying the chain.

■ The Kuballs' contention that unless Imperial has title to the assets of the Michigan motel partnership the New Jersey reorganization court may not interfere with the proceeding, is a far too restrictive view of the jurisdiction of a reorganization court and of the general policy underlying Chapter X. A complete reorganization of the affairs of Imperial cannot be accomplished in one proceeding if each individual partnership must be liquidated in different courts.

■ A reorganization court is vested, under § 111 of the Bankruptcy Act, with "exclusive jurisdiction over the debtor and its property." The definition of property for bankruptcy purposes and the authority of a reorganization court over a debtor's property have been interpreted broadly. See e. g. In re International Power Securities Corporation, 170 F.2d 399 (3d Cir. 1948); In re Pittsburgh Rys. Co., 155 F.2d 477, 483–485 and n. 15 (3d Cir. 1946) cert. denied, sub nom. Philadelphia Co. v. Guggenheim, 329 U.S. 731, 67 S.Ct. 89, 91 L.Ed. 632. Cf. New Haven Inclusion cases, 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970). This Court's decision in International Power Securities explained the broad injunctive powers inherent in the reorganization court by virtue of its equity nature as a bankruptcy court. In that case, Judge Kalodner stated the standard which is

---

6. Section 111 of the Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 511, gives the reorganization court exclusive jurisdiction over the debtor and its property. It says:

"Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."

7. § 32a Transfer of cases.

"(a) In the event petitions are filed by or against the same person or by or against different members of a partnership, in different courts of bankruptcy each of which has jurisdiction, the cases shall, by order of the court first acquiring jurisdiction, be transferred to and consolidated in the court which can proceed with the same for the greatest convenience of parties in interest." 11 U.S.C.A. § 55.

appropriate for considering the propriety of the New Jersey Court's action:

"Bankruptcy proceedings are inherently proceedings in equity. Reorganization proceedings under the Bankruptcy Act are 'special' proceedings which seek only to bring about a reorganization. The tendency of judicial interpretation of the Act has been in the direction of *progressive liberalization in respect of the operation of the bankruptcy power so as to meet the challenge of present day economics and business conditions. * * * * Among the powers granted under the Act are the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto." 170 F.2d at 402.

*See also* Continental Illinois National Bank & Trust Co. of Chicago v. Chicago Rock Island and Pacific Ry. Co., 294 U.S. 648, 675, 55 S.Ct. 595, 79 L.Ed. 1110 (1935).

 A prime consideration in determining whether a court may interfere with another proceeding which will affect the reorganization of the debtor, is the general policy of the reorganization statute: "that the entire administration of an estate should be centralized in a single reorganization court." Duggan v. Sansberry, 327 U.S. 499, 511, 66 S.Ct. 657, 662–663, 90 L.Ed. 809 (1946). *See also* In re Cuyahoga Finance Co., 136 F.2d 18, 21 (6th Cir. 1943). It is true, as the Kuballs contend, that "Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate." Callaway v. Benton, 336 U.S. 132, 142, 69 S.Ct. 435, 93 L.Ed. 553 (1949); In re South Jersey Land Corp., 361 F.2d 610 (3d Cir. 1966). But, a "reorganization court can and should

enjoin the prosecution of any suit which would take from it the decision of any question which it has the duty to decide in connection with the reorganization or which would hamper it in any way in exercising the power imposed upon it by Chapter X." First National Bank in Houston, Texas v. Lake, 199 F.2d 524, 528 (4th Cir.), *cert. denied*, 344 U.S. 914, 73 S.Ct. 337, 97 L.Ed. 705 (1952). The power of the reorganization court over the "estates of bankrupts and the determination of controversies in relation thereto" exists though the debtor does not have title to the property in question. In re International Power Securities Cor., 170 F.2d at 402. *See also* In re Burton Coal Co., 126 F.2d 447 (7th Cir. 1942).

 In order to effectuate the purpose of Chapter X proceedings—"to render the authority and control of the reorganization tribunal paramount and all-embracing to the extent required to achieve the ends contemplated by Chapter X; and to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the progress of reorganization" [6 Collier on Bankruptcy ¶ 3.03, p. 424 (14th Ed.)]—this Court has indicated that traditional concepts of property, title and separate entities may Co., 155 F.2d at 485; New York Trust Company v. New York and Greenwood Lake Ry. Co., 156 F.2d 701 at 704.[8]

A liquidation of the partnership in Michigan—the sole business of which is the Benton Harbor Motel—would undoubtedly affect the debtor's estate and its reorganization prospects. Imperial has a 75% interest in the partnership and, as Judge Shaw noted, a liquidation of the partnership would necessarily result in the distribution of Imperial's interest. As a partner, Imperial would

8. In re South Jersey Land Corp., 361 F.2d 610 (3d Cir. 1966), does not alter this principle. In one of the appeals in that case, the Court refused to disregard the traditional theory of separate entities. The opinion said however, "[i]n the past this court has not hesitated to disregard the traditional theory of separate entities"

citing In re Pittsburgh Rys., 361 F.2d at 613. A footnote in *South Jersey Land* also noted that "if [the Court] could not resolve the problem * * * by the disposition * * * in the second appeal, the equities of the instant appeal might compel us to a different conclusion." 361 F.2d 613, n. 6.

be liable for partnership debts which cannot be paid from partnership assets. Such a liquidation or similar liquidations of other motel partnerships in other bankruptcy courts would also break the chain of motels which constitute Imperial's principal business. Thus even though it may be argued that Imperial does not have title under the traditional concept of partnership property to the partnership assets, which consist solely of the motel business, the situation is one where the entire business organization should be treated as "one entity for purposes of reorganization." Pittsburgh Rys., 155 F.2d at 485.

■ The Kuballs maintain that the New Jersey court's exclusive jurisdiction over the "property" of Imperial under § 111 of the Bankruptcy Act extends only to the kind of property for which title passes to the trustee upon appointment in bankruptcy under § 70(a) of the Bankruptcy Act (11 U.S.C.A. § 110), and that Imperial does not have such title to the assets of the Michigan partnership. Section 70(a) (5) states that the trustee has title to "property, including rights of action, which prior to the filing of the petition * * * could by any means have [been] transferred * * * levied upon, or sold under judicial process * * *."

"The main thrust of § 70a(5)," the Supreme Court has said, "is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." Segal v. Rochelle, 382 U.S. 375, 376, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). Grappling with the word "property," the Supreme Court recognized that its meaning in the Bankruptcy Statute does not depend upon traditional concepts. In *Segal* the Court said: " 'it is impossible to give any categorical definition to the word "property," nor can we attach to it in certain relations the limitations which would be attached to it in others.' Fisher v. Cushman, 1 Cir., 103 F. 860, 864, 51 A.L.R. 292. Whether an item is classed as 'property' by the Fifth Amendment's Just-Compensation Clause or for purposes of a state taxing statute cannot decide hard cases under the Bankruptcy Act, whose own purposes must ultimately govern." 382 U.S. at 379, 86 S.Ct. at 515.

If we interpret "property" in view of this standard and the purpose of the reorganization statute, Imperial has a property interest in the Michigan motel business which is within the exclusive jurisdiction of the reorganization court.

■ The Agreement between the Kuballs and Imperial states they are tenants-in-common in the "Motel Business." The Motel Business and the partnership are identical. Imperial had the unrestricted right to transfer its interest. Thus the interest is alienable and the language of section 70(a) (5) and Segal v. Rochelle is satisfied.[9]

9. In re Panitz Co., 270 F.Supp. 448 (D. Md.1967), *aff'd per curiam sub nom.* Hammerman v. Arlington Federal Savings & Loan Association, 385 F.2d 835 (4th Cir. 1967), the case the Kuballs consider "most closely in line to the case at bar," is distinguishable. In *Panitz,* the Court refused to enjoin a creditor from continuing foreclosing proceedings on real estate owned by a partnership in which the corporate debtor was a limited partner. The court, however, emphasized that the debtor was a limited partner who could not transfer his interest. The Kuballs also rely on the definition of a partner's property rights as set forth in the Uniform Partnership Act. The Uniform Act says a partner's property rights are: (1) his right in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management. U.P.A. § 24. Section 25 of the Uniform Act states that a partner is a "Co-owner" of the partnership, holding as a "tenant in partnership," and his interest is not assignable or subject to attachment for individual debts. Nonetheless, the partnership agreement is the basic document setting forth the rights and duties of the partners among themselves, and it may alter the provisions of the Uniform Partnership Act.

As previously noted, the "separate entity" concept does not invariably preclude a reorganization court's jurisdiction. Pittsburgh Rys. Co., *supra,* New York Trust Co. v. New York & Greenwood Lake Ry. Co.,[10] *supra.* The entity theory is not inflexible in a partnership. A partnership may be an entity for some purposes and not for others. See Charles Edward & Associates v. England, 301 F.2d 572, 574 (9th Cir. 1962); [11] Mason v. Mitchell, 135 F.2d 599, 600 (9th Cir. 1943). When, as in this case, the partnership business is an integral part of the debtor's entire business operation and the creditors of the partnership are also creditors of the debtor, the artificial concept of a separate entity should not hinder the reorganization of the debtor in a single proceeding.

The Bankruptcy Act contemplates jurisdiction of the partners and partnership in the same court. Section 5(c) of the Bankruptcy Act (11 U.S.C. § 23(d)) provides: "The court of bankruptcy which has jurisdiction of one of the general partners may have jurisdiction of all the general partners and of the administration of the partnership and individual property." The Kuballs' argument that there is no jurisdiction in the New Jersey Court over the partnership or partnership property is therefore without merit. The New Jersey Court in the Chapter X proceeding had jurisdiction of Imperial, a partner; it also had jurisdiction of each of the partnership motels.

The Kuballs' construction of § 32(a) of the Bankruptcy Act is also without merit. This section provides that when petitions are filed by or against different members of a partnership in different courts of bankruptcy each of which has jurisdiction, "the cases shall by order of the court first acquiring jurisdiction be transferred to and consolidated in the court which can proceed * * * with the greatest convenience of parties in interest."

The Kuballs contend that the Michigan bankruptcy petition was filed *by or against the partnership,* and the reorganization petition by *a partner, Imperial.* Therefore, there were not two petitions by or against different members of a partnership. The fact, however, is that the bankruptcy petition was filed by the Kuballs, a partner, and the reorganization petition by Imperial, a partner. Thus, petitions were filed "by or against different members of a partnership in different courts." [12] Accordingly, the Court first acquiring jurisdiction properly "transferred to and consolidated" the proceedings for the "greatest convenience of the parties in interest."

The Kuballs do not press the argument that the transfer was not for "the greatest convenience of the parties," and we can find no reason to upset the determination of the New Jersey District Court that this was so.

The order of the District Court will be affirmed.

---

10. These cases indicate that a partnership is insolvent only if the partners are insolvent—thus abrogating the entity theory. *See also* Francis v. McNeal, 228 U.S. 695, 33 S.Ct. 701, 57 L.Ed. 1029 (1913).

11. *Cf.* Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845 (2d Cir. 1966); In re Schafer's Bakeries, 129 F.Supp. 82 (E.D.Mich.1955).

12. *Cf.* In re Andreana Classics, 134 F. Supp. 443, 444 n. 3 (S.D.N.Y.1955), where the Court said that the "practical reasons impelling passage of [11 U.S.C.A. § 55] would lead to the conclusion that the power exists in this situation [there was a partnership petition in one court and a partner's petition in another court] to transfer in the interest of convenience and justice."