In the Matter of PITTSBURGH–DU-
QUESNE DEVELOPMENT CO.,
a limited partnership.
No. 69–183.

United States District Court,
W. D. Pennsylvania.
June 11, 1971.

Gerald N. Ziskind, Pittsburgh, Pa., Trustee.

Gary L. Farren, Pittsburgh, Pa., for Urban Redevelopment.

Stanley V. Ostrow, Pittsburgh, Pa., for Trustee.

## OPINION

ROSENBERG, District Judge.

Presently before me for consideration is the "Application of Trustee for Authority to Borrow Money" in a sum not to exceed $30,000.00 for the purpose of making certain repairs and improvements on the remaining asset of the debtor's estate, in order to prepare that asset in accordance with a sub-lease agreement with the United States General Services Administration ("GSA").

This action was commenced as a Real Property Arrangement under § 422 of Chapter XII of the Bankruptcy Act, 11 U.S.C. § 822. On May 29, 1969 the debtor was authorized to remain in possession and all persons were enjoined from interfering with that possession. On August 14, 1969, the Trustee was appointed.

The property to which the Trustee came into possession consisted of an apartment building known as the Cricklewood Hill Apartments, and an older brick building estimated to be about 75 years old, known as the Pepsi-Cola Building, and sometimes known as the Geyer Building. The more valuable of the two was the apartment building. The apartment building was encumbered by two mortgages. The first as security for a sum of money owing to Prudential Insurance Company of America ("Prudential"), and the second as security for a sum of money owing to Equitable Gas Company.

The Urban Redevelopment Authority of Pittsburgh ("Urban") had entered into a lease with the debtor and the lease related to certain improvements to be made in combination with both the apartment building and the Pepsi-Cola Building, such as landscaping and street improvements.

In particular Sections 601 and 602 of the lease, in essence provided that no later than three (3) months from the date of the lease the redeveloper was to commence landscaping of the property, the construction of an open air-parking lot, the renovation of the Pepsi-Cola Building, and certain street improvements, to be completed within thirty (30) months of commencement of the construction.

While no evidence was presented at the last hearing, I am aware of the circumstances regarding the plans that the landscaping and street improvements were appurtenant to the Cricklewood apartment building rather than to the Pepsi-Cola Building, and that these actually do not relate to the Pepsi-Cola Building. The Trustee at the last hearing testified that he was informed by Urban's Executive Director that the only requirement for fulfilling the original plan as it related to the Pepsi-Cola Building was to bring in electricity and water, and that the use of the facility as a garage was most appropriate. The electricity and water repairs, the Trustee testified, were being included in the present repairs now being made to the Pepsi-Cola Building.

After a series of unsuccessful attempts to present arrangements, on April 1, 1971 upon petition of Prudential as holder of the first mortgage on the apartment building, Prudential was allowed to foreclose on its mortgage against the apartment building real estate of the debtor. There remained as assets of the debtor only the so-called Pepsi-Cola Building which is here now for consideration.

Over a long period of time the Trustee attempted to lease the Pepsi-Cola Building for any reasonable commercial or parking purpose, and only recently succeeded in procuring such a lease from GSA. The lease requires that the Trustee put the building in a useable condition. Pursuant to the terms of the sublease, the Trustee has already commenced and has made provisions for removing substantial amounts of debris; removing and replacing defective and obsolete pipes and electrical conduits; replacing damaged and missing doors; replacing bro-

ken windows; spray painting the entire two floors involved in the sub-lease with a basic coat of white paint; replacing the fittings in an old office; replacing damaged or missing washroom and toilet facilities; and correcting walls which were buckling due to earth pressure. These repairs were considered necessary to render the 75 year old structure which had previously been used as a commercial building and garage in a condition suitable for such occupancy.

Because certain funds now in the hands of the Trustee are being claimed by Prudential for tenants in the apartment building as deposits on the payment of rents, Prudential asserts it is entitled to such funds, or at least a part of them. Accordingly, the Trustee has no funds for the payment of the repairs and petitioned this Court for the allowance to borrow a sum of money up to $30,000.00 for the payment of repairs being made to the Pepsi-Cola Building.

Urban has objected to allowance of this petition on the grounds that the Trustee is in default on the original lease between Urban and the debtor and for this reason Urban has informed the Trustee that it has terminated the lease. The lease in question was for a term of ninety-nine years commencing on November 25, 1966. It provides for a monthly rental of $461.50 with an option to the lessee to purchase the leased premises for a price of $92,300.00 plus certain adjustments.

It would seem that Urban claims that the lease has been terminated for reasons which are not exactly explicit, but which include in its contention that the Trustee has not complied with the requirement for the renovation of the Pepsi-Cola Building, and that the expenditure of funds for improvements amounts to a renovation * of the building in accordance with the terms of the lease.

The Trustee contends that because of conditions which existed at the commencement of his trusteeship, he was barred from performing these particular covenants because of circumstances beyond his control. It is provided in Section 1104 of the lease that where due to circumstances beyond the control of the parties, situations arise which prevent fulfillment of the provisions of the lease, then performance is excused for the length of time in which it has become impossible. Thus the provisions of Section 602, if such contemplate renovation of the Pepsi-Cola Building were, according to the Trustee, not fulfilled because of the financial reorganization.

It would seem that the provisions of § 602 were included in the lease agreement for the benefit of the lessor. We have no information before us concerning the condition of the building as of the time of the lease, although we do have information that this was a 75 year old dilapidated brick building. And thus it would seem that as a part of the consideration for the lease, the lessor desired renovations and landscaping thereabouts to compare favorably with the surrounding community in accordance with the redevelopment plans. The Urban lease had provided that the lessee was to commence the improvements within three months and to have them completed within thirty months. We have no evidence on if or when any such improvements were commenced, except only as already stated to the effect that the landscaping and roadway improvements belong to the apartment building area. In any event before thirty-three months expired this Chapter XII was commenced and the Trustee came into possession of both the apartment building and the Pepsi-Cola Building.

Since, as the Trustee testified, the only requirement by the Executive Director of Urban was to bring in electricity and

* While the literal meaning of the terms "improvement" and "renovation" is rather broad so as to include synonymous applications such as renewal, restoration and repair, the legal significance of an improvement to real estate in American Land Law has a more limited meaning such as adding structures on or cultivating land. Black's Law Dictionary, Third Edition, page 927. The term "renovation" has such a broad application in law as to require particular definition. 76 C.J.S., page 1166.

water in order to comply with the requirements of § 602 of the lease, the work which the Trustee now seeks to have completed could have been defined in the provisions set forth in § 602 as repair work to put the building in such a condition as to make it tenantable. This work was necessitated by the abandoned and vandalized condition of the building, prior to this Chapter XII proceeding. The question here, therefore, is not whether the Trustee will be required to complete the renovations in accordance with a particular plan, but only concerns the undertaking of repairs for the purpose of procuring immediate assets so that the purposes for which the Trustee was appointed can be carried out, and I so hold.

■ The purpose of a Chapter XII proceeding is to provide relief for a debtor in order that he may be permitted to pay creditors over a period of time while continuing to operate his estate as a going business. In re Dick, 296 F.2d 912, C.A.7, 1961. "The power of the reorganization court over the 'estates of bankrupts and the determination of controversies in relation thereto' exists though the debtor does not have title to the property in question." In re Imperial "400" National, Inc., 429 F.2d 671, C.A.3, 1970. And includes any property of a debtor, no matter where located. In re Imperial "400" National, Inc., 429 F.2d 680, C.A.3, 1970.

■ Thus, in the present case the Trustee, functioning as an agent of the Court acquired title to the lease in question, and his election not to disclaim the lease but rather to use this asset for the betterment of the entire estate precludes the lessor from terminating the lease for failure of the Trustee to make certain renovations which the Trustee cannot, or perhaps is not even required, in good conscience, to undertake to perform at this time. The Trustee, acting on behalf of the Court and for the best interests of all creditors has labored arduously before securing this favorable lease from GSA which will produce funds enuring to the benefit to all creditors, and ultimately to Urban as well. Thus, the fact that at this time he has undertaken to provide necessary and delayed maintenance repairs in order to render the facilities usable rather than make renovations which might not be of immediate or greater benefit to the lessor, or, as a matter of fact, to the debtor's estate will not oust the Trustee from occupancy, and this exercise of apparently sound business discretion will not be disturbed. Mosser v. Darrow, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951).

There is another reason why the objection of Urban must be overruled. Urban is really not here as a party, and only came before this Court when the Trustee filed a petition for a special restraining order against Urban's activities. Urban had filed a proceeding in the Court of Common Pleas by which it attempted to procure a defeasance of the lease by way of judgment by confession in ejectment. After the special restraining order was filed calling Urban's attention to the original injunction issued in this proceeding, Urban either withdrew or quashed its proceeding in the Court of Common Pleas. See Urban Redevelopment Authority of Pittsburgh, as plaintiff, against Gerald N. Ziskind, Trustee in Bankruptcy for Pittsburgh-Duquesne Development Co., as defendant, at No. 1195 July 1971, Civil Division, in the Court of Common Pleas of Allegheny County, Pennsylvania.

Urban's next step was to come in as an objector against the Trustee's borrowing money for the payment of repairs for the building, and then it asserted its right to defeat the lease between the Trustee and itself. I am not convinced that this procedure presents a proper processing by which all creditors and interested parties in this proceeding have had a fair chance to evaluate any claim made by Urban to the Pepsi-Cola or Geyer Building, whichever it is called. This is important for the reason that the lease is practically the only remaining asset of the debtor, since even its right to cash in the hands of the Trustee is also being contested. And it is important for the

further reason that equitably the rights of creditors and debtors must be considered as against any possible claim of Urban.

█ Urban encouraged the Trustee in his efforts to render the building useable and gave no indication that the lease would be called for termination. For these repairs the Trustee has expended or become obligated to the extent of about $40,000.00. With the procurement of a basic tenant such as GSA, Urban now seeks to terminate the lease and secure the enhanced value of the building. However, Urban has obligated itself for ninety-nine years, and presumably it willingly entered into the lease. It may not now come in by a collateral proceeding of this kind and thwart the Trustee's functions and purposes, or defeat the rights of those who are entitled to any benefits whatsoever by reason of this Chapter XII proceedings.

I am not convinced that the objection of Urban here is either basic or entitled to any meritorious consideration. Accordingly, the objection of Urban will be overruled and the Trustee's application for authority to borrow money will be approved.