**In the Matter of BECK INDUSTRIES, INC., Debtor.**

**No. 71 B.523.**

United States District Court, S. D. New York.

Feb. 8, 1972.

Leon Leighton, and Irving Kirschenbaum, New York City, Trustees; Shea,

Gould, Climenko & Kramer, New York City, by Martin I. Shelton and Herman A. Bursky, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, by Simon H. Rifkind, James Purcell and Barry West, New York City, for Norman Lezin, Margaret Lezin and Helen Salz.

Milbank, Tweed, Hadley & McCloy, by Samuel R. Ballin, New York City, for Chase Manhattan Bank.

Lawrence Toscano, and Frederick R. Madero, New York City, for the Securities and Exchange Commission.

CANNELLA, District Judge.

The referee's order denying the application to modify the injunctive provisions of this Court's order of May 27, 1971 without prejudice to renewal at an appropriate time is affirmed. The referee's order granting the trustees' cross-motion in part is affirmed. The trustees' cross-motion for an order punishing Norman and Margaret Lezin and Helen Salz for contempt of court is denied.

The pertinent facts in this case are virtually undisputed. Prior to November 3, 1969, Norman and Margaret Lezin and Helen Salz [hereinafter "plaintiffs"] were among the principal stockholders of A. K. Salz Tannery, Inc. [hereinafter "Old Salz"], a leather tannery located in Santa Cruz, California. They also were the holders of approximately $500,000 of interest-bearing promissory notes of Old Salz as a result of monies advanced by them to that corporation. Pursuant to a merger agreement dated November 3, 1969, the plaintiffs sold all of their Old Salz stock to the debtor [hereinafter "Beck"] in exchange for the common stock of Beck[1] and Old Salz merged into Becksalz, a wholly owned subsidiary of Beck, to form a corporation subsequently named Salz Leathers, Inc. [hereinafter "New Salz"]. As a preliminary step in the merger agreement, the plaintiffs and Beck, among others, entered into an agreement on September 30, 1969, which provided, *inter alia*, that the Old Salz notes held by the plaintiffs would be cancelled and new notes of New Salz would be issued, to mature 42 months after the merger became effective; that Beck on the effective date of the merger would be deemed to have assumed and agreed to pay the new notes; and that Old Salz and its successors would be relieved of any obligation on these notes.

On October 25, 1970, the plaintiffs and other former stockholders of Old Salz commenced an action in this District Court entitled "Norman Lezin, et al. v. Beck Industries, Inc., et al.," 70 Civ. 4284 [hereinafter "New York action"] against Beck, New Salz, and others, seeking, *inter alia*, rescission of the merger agreement of November 3, 1969 on the ground that the plaintiffs had been fraudulently induced to enter into this agreement by false representations as to Beck's financial condition. On May 25, 1971, the plaintiffs commenced another action against Beck and New Salz in the Superior Court of California, Santa Cruz County [hereinafter "California action"], in which they sought to reform or rescind the agreement of September 30, 1969 in order to reinstate the original (Old Salz) notes; to hold these notes to be in default; and for judgment thereon.[2]

On May 27, 1971, this Court entered an order staying, *inter alia*, all persons from commencing or continuing an action at law or proceeding in equity against Beck. On August 16, 1971, the plaintiffs filed a request to enter a default judgment in the California action against New Salz. On August 20th, a hearing was held in that court, and on August 24th a default judgment was entered. On September 2, 1971, the plaintiffs made an application in this Court by way of an order to show cause for an order authorizing them to continue the

---

1. The plaintiffs also were given the right to receive additional Beck stock in the future under certain conditions.

2. This action was based upon the same facts as were alleged in the New York action, i. e., false representations by Beck as to its financial condition.

California action. On September 27, 1971, the trustees filed a "cross-motion" for an order (1) determining that the plaintiffs had violated this Court's order of May 27, 1971 by obtaining the default judgment in California, (2) directing them to take the necessary steps to open and vacate that judgment, (3) directing them to return the approximately $500,000 collected pursuant thereto and (4) punishing them for contempt of court. On September 27th, the court referred both the plaintiffs' application and the trustees' cross-motion to Referee Asa S. Herzog. On October 7, 1971, Referee Herzog denied the plaintiffs' application, granted the trustees' cross-motion and recommended that this court cite the plaintiffs for contempt.[3]

■ The plaintiffs contend that the referee's denial of their application to modify this Court's stay order of May 27, 1971 was erroneous because the trustees are incapable of formulating a plan of reorganization of Beck until such time as the New York action is resolved.[4] This application was denied, however, without prejudice to renewal at an appropriate time. This court concurs in the referee's opinion that the trustees' immediate tasks at this point are "to hold the debtor together as a unit, to keep it operating, to dispose of the deadwood, to conduct the thorough investigation imposed by statute and eventually to formulate a plan of reorganization or to report

why a plan cannot be proposed."[5] and that the trustees should not be diverted from this task by being required to defend this particular action at this particular time.[6]

■■ The plaintiffs also contend that the entry of a default judgment in the California action was not made in violation of the stay order of May 27, 1971. As a general rule, a reorganization court has no power to enjoin actions commenced against a debtor's solvent and wholly independent subsidiary. See 6 Collier on Bankruptcy § 3.11. This is based on the reasoning that Congress did not intend the bankruptcy court to have exclusive jurisdiction over "all controversies that in some way affect the debtor's estate." Callaway v. Benton, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949). The court finds, however, that under the circumstances of this case, Beck was directly affected by the California action and that this case is an exception to the general rule. See, e. g., In re Imperial "400" National Inc., 429 F.2d 671, 677 (3d Cir. 1970); cf. In re Adolf Gobel, 80 F.2d 849, 853 (2d Cir. 1936). Prior to the default judgment in the California action, the plaintiffs' claim in that action against Beck was stayed and Beck's merger agreement, by which it acquired New Salz, was inviolate. After the judgment, the relief requested by the plaintiffs in that claim was substantially granted; an integral

---

3. On October 20th, the court held a hearing on the recommendation of contempt. Since the referee had not yet certified the record on the petition for review, the court on October 26, 1971 stayed the referee's order insofar as it directed the plaintiffs to take steps to vacate the default judgment and insofar as it directed Norman Lezin to restore all monies taken from or paid out by New Salz in satisfaction of the default judgment, but ordered the plaintiffs to post a bond in the sum of $485,904.86 to abide the court's decision on all of the issues raised before the referee. On October 29, 1971, the court held a hearing on the posting of a proper bond. On November 4, 1971, the referee certified the record on the petition for review. On November 10, 1971, the

plaintiffs filed the required bond in this Court.

4. See Petition for Review, filed October 27, 1971, p. 2. The plaintiffs also argue that the referee's ruling was erroneous because it was based upon the conclusion that the stay order of May 27th was violated. The court is not persuaded, however, that the referee based his ruling on such a conclusion. See Referee's Decision, filed October 7, 1971, pp. 13–18.

5. Referee's Decision, filed October 7, 1971, p. 17.

6. The court, in addition, is not persuaded that the plaintiffs' speculation that New Salz may not be as profitable in the future should form the basis for a decision to allow this action to proceed.

part of the merger transaction, the agreement of September 30, 1969, had been partially rescinded;[7] and the treasury of the wholly-owned subsidiary acquired by Beck in the merger had been depleted by approximately $500,000.[8] The court therefore finds that the plaintiffs violated the stay order on May 25, 1971 by permitting the entry of a default judgment in the California action. However, the court is not persuaded at this time that this conduct was so wilfull and contumacious as to hold the plaintiffs in contempt for violation of the stay order.

In view of the foregoing, the referee's order denying the motion to modify the Court's stay order of May 25, 1971 is affirmed, the referee's order granting the trustees' cross-motion in part is affirmed, and the trustees' cross-motion for an order punishing the plaintiffs for contempt of court is denied. The plaintiffs are directed to take steps to vacate the default judgment entered in the California action on August 24, 1971, to restore forthwith to the Salz corporation all monies taken from or paid out by New Salz in satisfaction of that default judgment, and to pay the reasonable counsel fees expended by the trustees on their cross-motion in these proceedings.

The parties are directed to settle an order within ten days in conformity with this opinion.

So ordered.

7. See Exhibit H to Affidavit of Martin Shelton in Support of Cross-motion, filed September 27, 1971. The plaintiffs argue that this was merely "some maladroit language used by the Court here." See Hearing Minutes, October 20, 1971, p. 19. However, the court notes that it was the plaintiffs who apparently provided that court with the language used in the final decree. See Exhibit I to Affidavit of Martin Shelton, filed September 27, 1971, pp. 9, 11. In addition, the court finds that this rescission, involving Beck as a necessary party, was a condition precedent to the relief which the plaintiffs were seeking against New Salz.

8. The court also notes that this depletion was the result of an unusual adversary proceeding. The notice of the request to

enter default was only sent to New Salz, headed by Mr. Lezin, one of the plaintiffs in that action, thereby prompting Judge Charles N. Franich, presiding at the California inquest, to inquire how Mr. Lezin was to make a default against himself. See Exhibit I to Affidavit of Martin Shelton, filed September 27, 1971, p. 2.

The court also concurs in the referee's findings that Beck was directly affected by this judgment because (1) Beck was a named defendant in the California action, (2) proof of Beck's fraud was necessary in order to reinstate or reform the original notes, and (3) the default judgment definitely brought Beck within its sweep by rescinding a part of the September 30, 1969 agreement involving Beck. See Referee's Decision, p. 19.