See also, D.C., 338 F.Supp. 1369.

**In the Matter of BECK INDUSTRIES, INC., Debtor.**

**No. 71 B. 523.**

United States District Court,
S. D. New York.

Sept. 26, 1972.

Shea, Gould, Clemenko & Kramer, by Martin I. Shelton and Herman Bursky, New York City, for trustees of debtor Beck Industries.

Winer, Neuburger & Sive, by David Sive, New York City, and Gordon, Feinblatt & Rothman, by Donald Rothman, Baltimore, Md., for respondents.

Milbank, Tweed, Hadley & McCloy, by Samuel Ballin, New York City, for Chase Manhattan Bank, N. A.

Maurice L. Held, for Securities and Exchange Commission.

## MEMORANDUM

CANNELLA, District Judge.

The referee's order enjoining the respondents from proceeding with an action pending in Maryland, in which the respondents are plaintiffs and Webster Clothes, Inc., a wholly owned subsidiary of the debtor, is defendant, is affirmed.

In 1969 the debtor entered into negotiations with the stockholders of Webster Clothes, Inc. [hereinafter Webster (Md.)] for the purpose of acquiring the stock of that company. In order for these stockholders to secure the benefits of a tax free reorganization, a Delaware corporation, Beck Webster, Inc., was formed on April 25, 1969. On May 6, 1969, a merger agreement was executed between Webster (Md.) and Beck Webster, Inc. Subsequently the name of Beck Webster, Inc., was changed to Webster Clothes, Inc. [hereinafter Webster (Del.)]. Pursuant to further agreements between the parties, Webster (Del.) issued all its capital stock to the debtor thereby becoming its wholly owned subsidiary and the debtor transferred to Webster (Del.) 84,388 shares of its stock. The stockholders of Webster (Md.) then delivered to Webster (Del.) their shares of stock in exchange for the 84,388 shares of the debtor's stock. The parties further agreed that if on December 31, 1971, the market value of the 84,388 shares were less than 150% of their value on May 6, 1969, the stockholders would receive additional shares of the debtor's stock so as to bring the value of their holdings up to the required 150%.

On May 27, 1971, the debtor's petition for reorganization pursuant to Chapter X of the Bankruptcy Act was approved and an order was entered which restrained any interference with the Bankruptcy Court's exclusive jurisdiction over the debtor and its property. In view of the bankruptcy proceedings, the 84,388 shares were not worth 150% of their previous value and additional shares of the debtor's stock were not delivered. On January 13, 1972, the respondents, owners of approximately 65% of the Webster (Md.) stock instituted the Maryland action against Webster (Del.) to rescind the merger agreement on the ground of failure of consideration. On January 21, 1972, the respondents were ordered to show cause before the referee in bankruptcy why they should not be enjoined from proceeding with the Maryland action.

Although the Maryland action was instituted against the debtor's wholly owned subsidiary which ordinarily is not within the jurisdiction of the Chapter X court, the referee concluded that the equities of the instant case demanded a departure from the general rule. He stated:

> The subsidiary corporation, Webster (Del.), is an independent entity by virtue of the sheerest fiction. It was a mere adjunct or instrumentality of the parent, Beck. It was, in fact, an "instrumentality" of all the parties including the respondents in effecting the so-called merger which transferred the assets of Webster (Md.). The subsidiary was as much a pawn of the debtor as it was of the respondent.

The respondents (petitioners herein) urge that the referee's action in piercing the corporate veil was erroneous. Furthermore, they contend, *inter alia,* that the referee overlooked certain tax and accounting advantages in the debtor's favor and an independent covenant of the subsidiary to pay full consideration. The court finds that the findings made

by the referee are amply supported by the record and the applicable law and therefore affirms the order staying the Maryland action.

 Generally, the Chapter X court lacks the power to stay proceedings instituted against the debtor's solvent and wholly owned subsidiary except in circumstances where the parent and the subsidiary are so completely "one" such that the corporate veil may be pierced. 6 Collier on Bankruptcy § 3.11 at 500. See also Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949). Although the respondents have cited many cases where courts have refused to pierce the corporate veil, the ultimate decision in each case rests upon the particular facts of each case. See In re South Jersey Land Corporation, 361 F.2d 610 (3rd Cir. 1966). In reviewing the transactions surrounding the organization of the debtor's subsidiary, Webster (Del.), the court is persuaded that the general rule is inapplicable.

 It is well settled that courts will not permit themselves to be blinded or deceived by mere forms of law but will deal with the substance and realities of the transactions involved as the equities of the case may require. See e. g., Anderson v. Abbott, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793 (1944); Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L. Ed. 281 (1939). The essential character of the agreements between the parties was an exchange of the respondents' stock of Webster (Md.) for the stock of the debtor. The creation of the subsidiary was merely the "instrumentality" or the conduit through which the tax free nature of the transaction was accomplished. The debtor's receipt of certain minor benefits from the exchange and the existence of an independent covenant from the subsidiary does not serve to alter the fundamental character of the transaction.

In view of these considerations, the court is in accord with the referee's ruling that the prosecution of the Maryland action so directly affects the property of the debtor that the protection of the estate requires a stay. Cf. In re Federal Biscuit Company, 203 F. 37 (2d Cir. 1913); In re Collier, 4 F.Supp. 700 (S. D.N.Y.1933). See also In re Beck Industries, 338 F.Supp. 1369 (S.D.N.Y. 1972). Accordingly, the court concludes that the corporate veil should be pierced for the specific transactions involved herein.

So ordered.